STOGOP REALTY CO., INC., and Others, Appellants, *v.* MARIE ANTOINETTE HOTEL COMPANY, Respondent.

First Department, July 6, 1926.

Trade-marks and trade names — action to restrain use by defendant of name " Marie Antoinette " in connection with hotel — plaintiffs' predecessor in title constructed hotel, adopted name and conducted hotel for many years — lease to defendant gave right during term to use name in connection with another building adjoining, which was made part of original hotel — on expiration of lease defendant continued to use name in connection with other building — sale of property to plaintiffs carried rights under lease — Real Property Law, § 223, applied — plaintiffs' predecessor could have restrained use of name — clause in deed to present owners conveying appurtenances, etc., passed right to use of name — Real Property Law, § 255, applied — defendant's right to use name terminated with termination of lease — plaintiffs have not abandoned purpose of using premises as hotel — defendant's registry of name in office of Secretary of State is canceled.

This is an action to restrain the defendant from using in connection with its hotel the name " Marie Antoinette." The plaintiffs' predecessor in 1893 constructed an hotel on Broadway and Sixty-sixth street, New York city, and during con-

**556** Stogop Realty Co., Inc., *v.* Marie Antoinette Hotel Co.

First Department, July, 1926.          [Vol. 217

struction adopted the name " Marie Antoinette," and he conducted said hotel under that name for many years. In 1902 the defendant acquired a lease of the original hotel to be operated in connection with another building on adjoining property and acquired by the lease the right to use the name " Marie Antoinette " during the term of the lease. After the expiration of the lease the defendant continued to use the name " Marie Antoinette " in connection with the hotel which it continued to operate on that part of the property not belonging to the plaintiffs' predecessor or the plaintiffs.

The name " Marie Antoinette " became appurtenant to and inseparably connected with the premises, was a valuable property right and interest, and formed an element in the value of the hotel premises in the nature of a trade-mark and belonged to the owner of the premises, the plaintiffs' predecessor in title, and he would have had a right if he had continued owner of the premises to restrain third persons from using the name in connection with their hotel.

The conveyance to the plaintiffs of the property with appurtenances conveyed all the interests of the plaintiffs' predecessor in title, including the lease to the defendant, then in existence, under section 223 of the Real Property Law, and an assignment of that lease was not strictly essential to its transfer to the plaintiffs.

While the deeds to the plaintiffs do not purport to grant to the plaintiffs the right to use the name " Marie Antoinette," still under section 255 of the Real Property Law the clause in the deeds transferring to the grantees the property " together with the appurtenances and all the estate and rights of the parties of the first part in and to said premises " passed to the grantees the right to use the name in question in connection with the premises while used as an hotel, and, therefore, the plaintiffs stand in the same position as their predecessor in reference to the right to restrain third persons from making use of the name.

The right of the defendant to use the name " Marie Antoinette " in connection with its hotel terminated with the termination of the lease of the premises in question, for the lease contained a clause expressly limiting the right to use that name only during the period of the lease.

The contention by the defendant that the plaintiffs have abandoned the purpose of using the premises as an hotel cannot be sustained, for it appears that almost immediately after the expiration of the lease, alterations were commenced in the building for the purpose of transforming it so that could be operated independently as an hotel, and that while the alterations were not complete at the time of the trial of the action, the failure to have them completed at that time was not due to any fault on the part of the plaintiffs.

The contention by the defendant that the premises are not to be used as an hotel, based on the fact that the plaintiffs are so altering the building as to use it as an apartment hotel, cannot be sustained, for so-called apartment hotels are properly designated as hotels and not as apartment houses.

The plaintiffs have a right, as demanded in their complaint, to have the registry by the defendant of the name " Marie Antoinette " in the office of the Secretary of State revoked and canceled.

Martin, J., dissents.

Appeal by the plaintiffs, Stogop Realty Co., Inc., and others, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 1st day of July, 1924, upon the report of a referee appointed to hear and determine the whole issues.

*Ralph Wolf* of counsel [*Henry Abelson* with him on the brief; *Hays, Hershfield & Wolf,* attorneys], for the appellants.

*Percy F. Griffin* of counsel [*Middlebrook & Sincerbeaux,* attorneys], for the respondent.

WAGNER, J.   This action was brought to enjoin the defendant from using the name Marie Antoinette, or any simulation thereof, in connection with an hotel, and to secure relief specified in the complaint.   The facts in this record are practically undisputed and the only question before the court is one of law.

In 1892 one William L. Flanagan owned the premises at the northwest corner of Sixty-sixth street and Broadway in the city of New York.   During the years 1893 and 1894 he erected a building upon these premises, which was specially constructed for the purposes and uses of an hotel.   During the course of construction Mr. Flanagan determined to adopt and to appropriate the name " Marie Antoinette " to designate this hotel building, and with this purpose in view caused such name to be cut into the stone work over the entrance to the building where it still remains.   The initials " M. A." were wrought into the design of the ornamental iron gates and grill work at the entrance to the building, all of which are still in place and these letters were upon all the door knobs, upon the iron gratings and the elevator doors, upon the lighting fixtures, decorations and on other parts of the building.   When completed, the building was an eight-story structure containing approximately 159 guest rooms, excluding bathrooms, and was in all other respects fully and adequately equipped for the operation of a first-class hotel.   It was completely furnished by Mr. Flanagan, the linens being imported and having a crest with the initials " M. A." woven therein, and the dishes and furniture were also marked with the same letters.   After some advertising, the hotel was opened to the public by Mr. Flanagan on October 11, 1894, and for the succeeding eight years, and until October 12, 1902, he or his representatives conducted the establishment as an hotel.   During this period it was the only hotel in New York known by that name.

On July 19, 1901, said Flanagan, the owner, made a deed of his property, including the Hotel Marie Antoinette, to certain trustees under which deed the trustees became the owners in fee of said hotel premises and the owners and proprietors of the hotel business. This deed was accompanied by a declaration of trust which provided, among other things, that the trust deed should become void upon the death of William L. Flanagan.   This occurred on January 18, 1903.

Prior to 1903 there was a vacant lot to the north of the " Hotel

**558** Stogop Realty Co., Inc., *v.* Marie Antoinette Hotel Co.

First Department, July, 1926. [Vol. 217

Marie Antoinette '' at the southwest corner of Sixty-seventh street and Broadway, which lot, together with the '' Hotel Marie Antoinette '' building just described, covered the entire frontage on the westerly side of Broadway between Sixty-sixth and Sixty-seventh streets. The Sixty-seventh street lot was owned by a New York corporation known as the Boulevard Corporation.

On February 19, 1902, a lease for twenty-one years was made between Albert R. Keen, as lessee, and William L. Flanagan personally and the Flanagan trustees under the deed of trust, as lessors, covering the Sixty-sixth street premises together '' with the building thereon erected, known as the Hotel Marie Antoinette, together with the right to the party of the second part [lessee] to the exclusive use of the name ' Marie Antoinette ' for the purposes of said hotel, together with all the personal property therein contained, an inventory of which is to be hereto annexed signed by the parties hereto, with the appurtenances, for the term of 21 years from the 1st day of October, 1902.''

Among other provisions, this lease contained the following:

'' It is hereby agreed between the parties hereto that connections may be made between the said premises and the adjoining building to be erected on the north thereof in such locations as the said party of the second part [lessee] may deem desirable, but on plans submitted to the parties of the first part by the party of the second part and approved by them; provided, however, and it is hereby agreed, that the above leased premises shall be restored to their original condition by and at the expense of the party of the second part at the expiration or earlier termination of this lease or a renewal thereof.

'' It is further agreed by and between the parties hereto at the termination of this lease or any renewals thereof which may be agreed upon that the name ' Marie Antoinette ' and the right to use the same shall revert to and become the sole property of the parties of the first part [lessors], their successors or assigns  *  *  *

'' And the said party of the second part [lessee] further covenants and agrees to use said premises for the purposes of a first-class hotel and for no other purpose.''

By another instrument in writing, bearing the same date as this lease, executed by the trustees and Flanagan, as parties of the first part and said Albert R. Keen, as party of the second part, it was provided as follows:

'' Whereas, as an inducement to the parties of the first part to make and enter into said lease with the party of the second part, the said party of the second part hereby agrees to procure a lease of premises adjoining the demised premises on the north

[67th Street premises], upon which a twelve-story hotel is to be erected, which said lease, together with the lease of the hotel Marie Antoinette are to be assigned to a company or corporation to be organized by the said party of the second part on or before October 1st, 1902, * * *

" *Now, therefore,* for and in consideration of one dollar * * * the parties of the first part hereby consent to the assignment of the lease of said hotel Marie Antoinette by the party of the second part to the said corporation so to be formed.

" The said party of the second part hereby agrees to organize and incorporate said corporation on or before October 1st, 1902, and to assign the lease of said hotel Marie Antoinette, together with the lease of the aforesaid adjacent premises to said corporation.

" The party of the second part further agrees that upon the organization of said corporation, he will procure said corporation to accept assignments of said leases, and to assume and agree to pay the rents reserved therein and to keep and perform all the covenants therein contained, and contained in this agreement." (Brackets ours.)

Mr. Keen complied with the provisions of this agreement and obtained a lease for twenty-one years of the Sixty-seventh street premises, which, on March 4, 1902, he assigned to the defendant herein, Marie Antoinette Hotel Company. To this company he also assigned the lease of " Hotel Marie Antoinette " (the Sixty-sixth street premises) by an assignment jointly executed by Keen and the defendant. By such instrument the defendant does " assume and agree to perform, fulfill and carry out the agreements, covenants, conditions and provisions which in the said indenture of lease are by the said Albert R. Keen agreed to be performed."

It is, therefore, apparent that when the lease was made, defendant's assignor, and thereafter defendant, had notice and expressly agreed that their right to use the name " Marie Antoinette " would cease and terminate at the end of such lease.

From and after October 1, 1902, the defendant hotel company managed and operated the " Marie Antoinette Hotel," established at Sixty-sixth street and Broadway. About April 15, 1903, a twelve-story hotel building having been erected on the Sixty-seventh street premises, adjoining the " Marie Antoinette Hotel," connections were made between the two structures and the new building was advertised and announced as " the new addition to Hotel Marie Antoinette."

The two buildings were jointly operated by the defendant as the " Marie Antoinette Hotel " until October 1, 1923, when the lease covering the original " Marie Antoinette Hotel " premises expired, and was not renewed.

**560**  STOGOP REALTY CO., INC., *v.* MARIE ANTOINETTE HOTEL CO.

First Department, July, 1926.                    [Vol. 217

Since October 1, 1923, the defendant corporation has continued operating an hotel in the structure at Sixty-seventh street and Broadway, and in connection therewith is using the name "Hotel Marie Antoinette." An electric sign, about six feet high by thirty feet long illuminated at night and displaying the name "Hotel Marie Antoinette," has been maintained on the roof of the defendant's Sixty-seventh street building. The defendant has distributed and used stationery designating such premises as the "Hotel Marie Antoinette." Defendant has caused the name "Hotel Marie Antoinette" with the address of its premises, to appear in the telephone book. The stationery used by defendant after October 1, 1923, contained pictures purporting to show that its hotel covers the entire Broadway block between Sixty-sixth and Sixty-seventh streets. Confusion has necessarily resulted in the delivery of mail and prospective guests and others have been mistaken as to which of the two buildings is the Hotel Marie Antoinette.

The plaintiffs Stogop Realty Co., Inc., and Aloumor Realty Corporation are the owners in fee of the Sixty-sixth street premises, each owning an undivided one-half thereof, and claim to be possesed of all the right, title and interest of William L. Flanagan, the original owner, by reason of certain conveyances to them hereinafter described, the lease of February 19, 1902, and the undisputed facts in evidence, and in consequence to have the exclusive right to the use of the name Hotel Marie Antoinette. By this action they seek permanent injunction against the use by defendant of such name or any simulation thereof in connection with an hotel.

William L. Flanagan upon his death, on January 18, 1903, left a will which was duly probated, in which he devised one-half of his property to his son, William L. Flanagan, Jr., and the other one-half thereof to trustees named in his will. By mesne conveyances, which we deem unnecessary to enumerate, an undivided one-half of the Sixty-sixth street premises was eventually conveyed to the plaintiff Stogop Realty Co., Inc., by a conveyance dated January 25, 1921, and the other undivided one-half of said premises was eventually conveyed to the plaintiff Aloumor Realty Corporation by a conveyance dated April 11, 1921, since which respective dates these plaintiffs have been the owners in fee of such premises. To them the defendant Marie Antoinette Hotel Company thereafter paid the rent reserved under the lease dated February 19, 1902, until its expiration on October 1, 1923. The Aloumor Realty Corporation also obtained an assignment to it of the said lease of February 19, 1902. As the property had been conveyed with the appurtenances, without reservation, even without

such formal assignment of lease, the deed effectually transferred all the grantor's rights in and under the unexpired lease. (Real Prop. Law, § 223; *Proctor Troy Properties Co.* v. *Dugan Store,* 191 App. Div. 685.)

The deeds of conveyance in the chains of title to the said plaintiffs convey the Sixty-sixth street premises by metes and bounds and do not specifically describe the premises as the " Hotel Marie Antoinette," nor do any of said deeds by specific words grant or convey the right to the use of the name " Hotel Marie Antoinette." Each of said deeds in the chains of title, however, has the statutory phrase: " Together with the appurtenances and all the estates and rights of the party of the first part [grantors] in and to said premises."

The plaintiff Marie Antoinette Realty Company, Inc., is a New York corporation, incorporated February 9, 1923, and at the commencement of this suit November 13, 1923, was in possession of the Sixty-sixth street premises as lessee under a lease for a term of twenty-one years commencing October 1, 1923. This was a lease made by the plaintiff owners dated February 5, 1923, to one Morris Tobias, and Tobias thereafter assigned this lease to the plaintiff Marie Antoinette Realty Company, Inc., which corporation took possession of the demised premises on October 1, 1923, when the lease to the defendant hotel company expired. On or about December 15, 1923, and prior to the close of the trial herein, the plaintiff realty company, as lessee, was dispossessed and accordingly has no further interest in this suit.

This twenty-one-year lease to Tobias, dated February 5, 1923, leased the premises at the northwest corner of Sixty-sixth street and Broadway, being known as the Hotel Marie Antoinette, to be used and occupied as an apartment hotel and for business or stores on the ground floor, together with the right, if any, of the landlords, to the exclusive use of the name " Marie Antoinette " in connection with the use of said premises.

The Tobias lease further provided: " Tenant agrees that on or before September 30, 1924, he will at his own proper cost and expense in a good and workmanlike manner, and in accordance with plans and specifications, make and complete all such alterations, additions and improvements to the building now erected upon the demised premises as shall be appropriate to change and alter the building into a business and apartment hotel, which shall contain stores on the ground floor and one, two and three room apartments, each apartment with a bath, on each of the other floors throughout the building."

With the permission of the then owners of the Sixty-sixth street

**562** Stogop Realty Co., Inc., *v.* Marie Antoinette Hotel Co.

First Department, July, 1926. [Vol. 217

premises, shortly after 1903, the heating and power plant, the kitchen and dining room and other incidental hotel equipment· had been removed from the Sixty-sixth street premises, and the ground or street floor had been altered for store use, leaving the upper floors of the Sixty-sixth street premises divided into apartments for guests, and prior to October 1, 1923, the date of the expiration of the Keen lease, the furniture, furnishings and certain other personal equipment located in the Sixty-sixth street premises had been sold by the Flanagan interests by formal bills of sale to the defendant hotel company.

Immediately after October 1, 1923, the plaintiffs herein, as owners of the Sixty-sixth street premises, proceeded with alterations and repairs in order to make the Sixty-sixth street premises an hotel complete in itself, and divided it into suites of rooms, and advertised it in the newspapers as an apartment hotel under the name of the Marie Antoinette Hotel.

The plaintiffs claim that Mr. Flanagan, as the owner of the premises, by his acts appropriated and established the name " Hotel Marie Antoinette " for the hotel premises at the southwest corner of Sixty-sixth street and Broadway; that the lease of February 19, 1902, specifically grants to the lessee the right or license to use the name " Marie Antoinette," in connection with the hotel business merely for the term of twenty-one years. Further, that they are the successors by duly executed deeds of conveyance, of all the right, title and interest of William L. Flanagan in the said Sixty-sixth street premises, and that such right, title and interest includes the use of the name " Marie Antoinette Hotel " exclusively in connection with such premises.

This building was specially constructed by Mr. Flanagan for use as an hotel. Before its completion he selected and appropriated for it the name " Hotel Marie Antoinette." For eight years from its completion Mr. Flanagan· operated the premises as the " Hotel Marie Antoinette " and during that period it was the only hotel premises conducted under that name in the city of New York. It is our opinion that the name " Marie Antoinette " thereby became appurtenant to and inseparably connected with the said premises, was a valuable property right and interest, formed an element in the value of the hotel premises in the nature of a trade-mark, and belonged to the owner of the premises.

It has been decided that the name established for a hotel is a trade-mark in which the proprietor has a valuable interest which a court will protect. (*Howard* v. *Henriques,* 5 N. Y. Super. Ct. [3 Sandf.] 725; *Martell* v. *St. Francis Hotel Co.,* 51 Wash. 375; *O'Grady* v. *McDonald,* 72 N. J. Eq. 805; *Busch* v. *Gross,* 71 id.

508; *Mitchell* v. *Read*, 19 Hun, 418; *Marsh* v. *Billings*, 7 Cush. 322; *McCardel* v. *Peck*, 28 How. Pr. 120; *Mark Realty Corporation* v. *Hirsch*, 180 App. Div. 549.)

In *Mark Realty Corporation* v. *Hirsch* (*supra*, 554) Mr. Justice DOWLING stated: " A party will be protected in the use of a name which he has appropriated and rendered valuable, and this rule is not limited to its use as a designation of manufactured goods, but has been applied to the title of a hotel."

When Mr. Flanagan died on January 18, 1903, all his right, title and interest in and to the Sixty-sixth street premises became part of his estate and eventually passed by deeds of conveyance to the plaintiffs herein, who secured title in the year 1921, over two years before the expiration of the said lease.

The defendant contends that the deeds of conveyance to these plaintiffs are wholly insufficient to convey the use of the name " Hotel Marie Antoinette," insisting that this is a name not appurtenant to or part and parcel of the hotel premises at Sixty-sixth street and Broadway, but a name attached to the hotel business as distinct from the hotel building itself, the transfer of which would require specific language indicating the transfer and conveyance of such rights to the use of the name, and that such transfer or conveyance is not affected by the statutory language contained in the deeds to these plaintiffs, namely: " Together with the appurtenances and all the estates and rights of the party of the first part in and to said premises."

The scope and meaning of this statutory language is defined in section 255 of the Real Property Law, which reads as follows: " In any grant or mortgage of freehold interests in real-estate, the words, ' together with the appurtenances and all the estate and rights of the grantor in and to said premises,' must be construed as meaning, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, dower and right of dower, curtesy and right of curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of the said grantor of, in and to the said granted premises and every part and parcel thereof, with the appurtenances."

The conveyances in question were the transfer and sale of a business site, were absolute and unqualified and granted all the right, title and interest of the grantors, successors in title of William L. Flanagan, the original owner. There was no provision in these deeds that the premises purchased should not thereafter be used

**564** STOGOP REALTY CO., INC., *v.* MARIE ANTOINETTE HOTEL CO.

First Department, July, 1926. [Vol. 217

by the purchaser for the purposes of an hotel or that the premises should not be called by their old name. These conveyances place these plaintiffs in the same position and situation as would Mr. William L. Flanagan himself have been had he been alive on October 1, 1923, the date of the expiration of the said lease. The proposition of the defendant is that, nevertheless, there still remains vested in the seller an exclusive right to the name, transferable by him as a separate right, and available to the transferee as against the purchaser of the premises and all the world.

It is our opinion that the right to use the name " Hotel Marie Antoinette " was inseparably associated with the Sixty-sixth street premises and passed as an incident with the transfer of the fee of such premises. (*Mitchell* v. *Read*, 19 Hun, 418; affd., 84 N. Y. 556.)

English and Scotch courts have considered this precise question and have come to a like conclusion. We consider them very persuasive precedent. (*Mason* v. *Queen*, 23 Scot. L. R. 641; *King* v. *Midland R. Co.*, 17 W. R. 113; *Chissum* v. *Dewes*, 5 Russ. 29, 30; *Ex parte Punnett*, 50 L. J. Ch. 212, 214; *Great North of Scotland R. Co.* v. *Mann*, 19 Sess. Cas. Sc. [4th Ser. 1891–92] 1035; *Boussod, Valadon & Co.* v. *Marchant*, 25 Repts. of Patent Cases, 42 [English]; *Llewellyn* v. *Rutherford*, L. R. 10 C. P. 456, 467.)

In Nims on Unfair Competition and Trade Marks (2d ed. § 21), concerning the sale of a hotel, the author states: " In such cases he who buys the buildings, or acquires the right to occupy them, will have the right to use the name attaching thereto, in the absence of very explicit contractual arrangement."

In Hopkins on Trade Marks (4th ed. 1924), in speaking of the good will of a hotel, the author states at (p. 228): " But when we come to speak of the good will of a public house, it is obvious that it is a thing which is attached to a locality. In accordance with this rule, whenever the good will is local, in the sense of being attached to a particular house or store, it will pass with a sale of the lease of the trading premises, or the sale of a public house."

The rule is also stated in Halsbury's Laws of England (Vol. 27, p. 755, § 1336) as follows: " Where a place of business is sold, even without the good will, the right to use the name of that place usually passes to the purchaser, particularly if the name is carved on or affixed to the building."

The right of the defendant here to use the name Marie Antoinette in connection with any hotel business is measured by the terms of the lease dated February 19, 1902. It was a mere temporary right or license to use the name Marie Antoinette for a definite period of time, namely, during the term of twenty-one years specified

in the lease. By the express terms of this lease, at its expiration on October 1, 1923, the right of the defendant corporation to use the name Hotel Marie Antoinette in connection with hotel business ceased and reverted to the owners of the leased premises, who at that time were these plaintiffs.

In *Chittenden* v. *Witbeck* (50 Mich. 401), which is cited with approval in *People ex rel. Johnson Co.* v. *Roberts* (159 N. Y. 70, 81), it was held, Judge COOLEY writing the opinion: " Good-will is the favor which the management of a business wins from the public, and the probability that old customers will continue their patronage. But it attaches to the property, and in the case of a lease belongs to the lessee only during its continuance, and on its expiration reverts to the lessor; and in fixing rent the lessor can take it into the account as giving the property a part of its value."

In *Llewellyn* v. *Rutherford* (L. R. 10 C. P. 456) Chief Justice LORD COLERIDGE stated (at p. 467): " Here is a public house in which a thriving business has been carried on, having attached to it that which has been variously described as good will,— a thing which has an appreciable value and is every day bought and sold. That good will the tenant is about to forego. In the absence of a stipulation to the contrary, it would be an increased value of the premises, which on the tenant's going away would enure to the benefit of the landlord; he might let them for an increased rent or he might obtain a premium. In the absence of a stipulation, the tenant could derive no advantage from such increased value. The end of the term having arrived, all he could take away would be the stock in trade and the tenant's fixtures. The good will is lost to him."

There is abundant evidence in the record that since October 1, 1923, the present owners have proceeded to restore the Sixty-sixth street premises, so that the same could be operated independently as an hotel. Immediately upon the termination of the Keen lease on October 1, 1923, the plaintiffs inserted advertisements in the daily papers stating that the " Hotel Marie Antoinette " at Broadway and Sixty-sixth street, northwest corner, offered one, two or three rooms and bath furnished or unfurnished, on yearly lease, with immediate possession.

The alterations required the construction of a new entrance on Broadway, alterations in the lobby and sitting room and the installation of kitchens, dining rooms, power and lighting plant, in other words, the making of the Sixty-sixth street premises into a complete, separate hotel unit. Plans and specifications covering these and other necessary changes were filed in the proper municipal departments. Under the Tobias lease the lessors secured a surety

company bond for $50,000 to insure the making of these repairs and alterations, which through no fault of the plaintiffs had not been completed when the trial of this case finished near the end of December, 1923. The fact remains that the plaintiffs were proceeding with reasonable diligence to make such alterations and repairs for the purpose of using and renting the premises as an hotel under the name "Hotel Marie Antoinette." There is no merit in the suggestion that the present owners abandoned the purpose of using these premises as an hotel under such name. Nor does the fact that the premises were to be divided up into suites of one, two and three rooms and baths, rather than into single rooms, warrant the conclusion that they were intended to be used and conducted by the plaintiffs merely as an apartment house, rather than as an hotel; there are many so-called apartment hotels in New York city, properly designated as hotels and not as apartment houses.

The plaintiffs in their complaint also ask relief that the registration by defendant of the name "Marie Antoinette," granted on defendant's application by the Secretary of the State of New York on July 17, 1923, be revoked and canceled. This relief should be afforded to the plaintiffs.

The judgment appealed from should be reversed, with costs, and judgment entered in favor of the plaintiffs for the relief asked for in the complaint, except for an accounting of profits, with costs to the plaintiffs.

CLARKE, P. J., MERRELL and FINCH, JJ., concur; MARTIN, J., dissents.

Judgment reversed, with costs, and judgment entered in favor of the plaintiffs for the relief asked for in the complaint, except for an accounting of profits, with costs to the plaintiffs. Settle order on notice.