THE SAMUEL STORES, Plaintiff, *v.* QUEEN CITY CREDIT CLOTHING CORPORATION, Defendant.

Supreme Court, Erie County, November 4, 1935.

*Kimball & Smith [Clayton M. Smith* of counsel], for the plaintiff.

*Aaron & Dautch [A. Howard Aaron* of counsel], for the defendant.

MALONEY, J. Plaintiff moves for a temporary injunction enjoining and restraining the defendant from using the wording " Queen City Credit Clothing Corporation," or any colorable imitation thereof, as the trade or business name or slogan in connection with the conduct of its business.

The following facts are uncontradicted: In the year 1900 Morris Samuel and Rose Samuel, his wife, conducted a credit clothing business in the city of Buffalo, N. Y., under the assumed name of Queen City Credit Clothing Company. A certificate to that effect was filed in the office of the clerk of Erie county. Thereafter Morris Samuel and Samuel Samuel became the successors in interest of said business, and in 1902 filed such certificate in the office of the clerk of the county of Erie. The plaintiff in July, 1911, purchased the good will and business of the Queen City Credit Clothing Company and became the successor in interest in said trade name and has ever since used said trade name in the conduct of a general credit clothing business in the city of Buffalo, and is so conducting said business at 505 Main street, Buffalo, N. Y.

The plaintiff and its predecessors for thirty-five years last past have operated in the city of Buffalo a general credit clothing business

under said trade name. The plaintiff and its predecessors have prominently displayed said trade name on their stores. During such period the plaintiff and its predecessors have expended large sums of money in extensive newspaper advertising, printing, circularizing, radio broadcasting and other means to stimulate and invite the public to their various stores in Buffalo, Niagara Falls and Jamestown, in each of which stores the same trade name is used.

The defendant filed a certificate of incorporation with the Secretary of State on or about the 15th day of October, 1935. The certificate was signed by Simon Kareff, Reuben Russack and Ray E. Brumberg. Said certificate authorized the defendant to carry on and conduct a general credit clothing business. The defendant on or about October 24, 1935, erected and placed on the front of the building 579 Main street, and across the windows of the second floor, a large sign reading " Queen City Credit Clothing Corporation will open here on or about November 10th with a complete line of clothing for men, women and children on easy payments."

It is plain that the defendant intends to engage in the same type of business that this plaintiff or its predecessors have conducted under or used as a trade name in the city of Buffalo for over thirty-five years, and which name the plaintiff and its predecessors have caused to receive widespread publicity and recognition, and to be of very great value.

It is not disputed by the defendant that if the plaintiff has a superior or paramount legal right to the use of said name over that of the defendant, the use by defendant of such trade name is an unlawful invasion of the plaintiff's rights.

It is the claim of the defendant that the plaintiff corporation acquired no legal right whatever to the use of the name " Queen City Clothing Company " or " Queen City Credit Clothing Company." It is the further claim of the defendant that the plaintiff is restricted to the use of its corporate name and may not use such trade name in the operation of the retail stores in question.

The General Corporation Law, section 9, prohibits the filing or recording in any office of a certificate of incorporation or of authorization to do business in this State of a proposed corporation having the same name as a corporation authorized to do business under the laws of the State, or a name so nearly resembling it as to be calculated to deceive.

The aforesaid " prohibition * * * is equally applicable under general and well-recognized principles to the adoption of a trade name by an individual or copartnership." (*German-American Button Co.* v. *Heymsfeld, Inc.*, 170 App. Div. 416, 419.)

The Court of Appeals, in *Higgins* v. *Higgins Soap Co.* (144 N. Y. 462), said: " It is well settled that an exclusive right may be acquired in the name in which a business has been carried on, whether the name of a partnership or of an individual, and it will be protected against infringement by another who assumes it for the purposes of deception, or even when innocently used without right to the detriment of another."

The sole question for determination in this motion is whether or not the plaintiff, The Samuel Stores, a domestic corporation, may legally use the trade name or style on its stores located in Buffalo, Jamestown and Niagara Falls, of Queen City Credit Clothing Company or Queen City Clothing Company. If so, have they established such a superior and paramount right to the use thereof as to warrant a restraining order in this proceeding?

It is apparent from the voluminous uncontradicted affidavits used by plaintiff on the within motion, that plaintiff conducted business in its corporate name, and featured the name Queen City Clothing Company or Queen City Credit Clothing Company as a trade name. It was well known to the creditors of the plaintiff that such featured name was a valuable trade name familiar to the buying public; that the plaintiff was the owner of and conducted such business; that all bills incurred were paid by the plaintiff; that advertising in the newspapers, radio and otherwise, was contracted for and paid by the plaintiff; that the checks of the plaintiff were used in the payment of bills; that the banking relations and deposits from the Queen City Credit Clothing Company were all in the name of the plaintiff; that during all that time checks or negotiable paper, payable to the Queen City Clothing Company, were deposited in the plaintiff's account; that the lease of the store occupied by the plaintiff, as well as the contract with the General Electric Company for electric service, was made in the name of the plaintiff; that contracts for flexlume signs, illuminated signs, advertising display signs used on the premises, were made with the plaintiff and that Dun and Bradstreet, commercial rating agencies, were cognizant of the fact that the plaintiff was operating such stores. It is apparent from the above facts that the trade or others having contractual or credit dealings with plaintiff were not deceived.

The courts have distinguished between conducting a business under an assumed name and the use in a business of a valid trade name or style.

" An assumed name under which to do business is not the same as one used as a symbol of the service rendered. One may do business under one name and symbolize it by another. * * *

" The appropriation by defendant of plaintiffs' trade name as an assumed name under which to do the same kind of business and as a corporate name, with knowledge and notice that such name was the property of plaintiffs, subjected plaintiffs to unfair competition and an invasion of the good will acquired by them for their trade name and they are entitled to an injunction perpetually restraining the defendant from the use, as part of its corporate name, of the words constituting plaintiffs' trade name." (*Lehrenkrauss* v. *Universal Tours, Inc.*, 262 N. Y. 332, headnote.)

" ' The essence of these principles [of the law of unfair competition] is that competition between business rivals must be fairly and honestly conducted. " The survival of the fittest " in trade and commerce must result from contests legitimately launched and ethically directed.' * * * ' The doctrine of unfair trade amounts to no more than this: One person has no right to sell goods as the goods of another, nor to do other business as the business of another, and on proper showing will be restrained from so doing.' " (*Bengue* v. *American Pharmaceutical Co., Inc.*, 155 Misc. 602, 604, 605, citing *American Chain Co., Inc.*, v. *Carr Chain Works, Inc.*, 141 Misc. 303, and *White Studio, Inc.*, v. *Dreyfoos*, 221 N. Y. 46.)

" It seems to be well recognized that a corporation may be known by several names in the transaction of its business, and it may enforce and be bound by contracts entered into in an adopted name other than the regular name under which it was incorporated." (*Mail & Express Co., Inc.*, v. *Parker Axles, Inc.*, 204 App. Div. 327, 329.)

It is common knowledge that various corporations, including newspapers, hotels, railroads and numerous other businesses, frequently use a trade name. The courts have taken cognizance of this custom in many cases:

" It is also true that the name of a newspaper may be used as a convenient symbol for its owner." (*Wahlheimer* v. *Hardenbergh*, 217 N. Y. 264.)

" Defendant, however, urges numerous objections to the granting of an injunction in this case. The first is that subdivision 1 of section 440 of the Penal Law (as amd. by Laws of 1929, chap. 58) makes it a misdemeanor for any business firm to conduct business under a trade name without filing a certificate showing such trade or assumed name. It is conceded that the Great Atlantic and Pacific Tea Company has not filed a certificate showing such assumed name. However, subdivision 4 of that section reads: ' This section shall in no way affect or apply to any corporation duly organized under the laws of this state, or to any corporation organized under the laws of any other state and lawfully doing business in this

state. * * *.' Moreover, the plaintiff is not doing business under the name 'A. & P.' It is merely claimed that its public knows it as an 'A. & P.' store or market, and that the good will which goes with its nickname is what the defendant is attempting to deprive plaintiff of. I think defendant's point is not well taken." (*Great Atlantic & Pacific Tea Co.* v. *A. & P. Meat Market, Inc.*, 138 Misc. 224, at pp. 225, 226, citing *Lipson* v. *Feigenbaum*, 205 App. Div. 701.)

In *Mark Realty Corporation* v. *Hirsch* (180 App. Div. 549, 553), quoting from *Material Men's Mercantile Assn., Ltd.*, v. *New York Material Men's Mercantile Assn., Inc.* (169 id. 843, 847; affd., 224 N. Y. 670, no opinion), the court said: " The use of so similar a name in the circumstances fairly warrants the inference that it was selected by those who incorporated the defendant for the purpose of obtaining some benefit or advantage from the good will of the plaintiff's long-established and successful business."

" The name ' Marie Antoinette ' became appurtenant to and inseparably connected with the premises, was a valuable property right and interest, and formed an element in the value of the hotel premises in the nature of a trade-mark and belonged to the owner of the premises, the plaintiffs' predecessor in title, and he would have had a right if he had continued owner of the premises to restrain third persons from using the name in connection with their hotel." (*Stogop Realty Co., Inc.*, v. *Marie Antoinette Hotel Co.*, 217 App. Div. 555, quoting from headnote.)

In that case the contention of the plaintiffs that they had the right to use the name Marie Antoinette on their hotel was sustained. (*Stogop Realty Co., Inc.*, v. *Marie Antoinette Hotel Co., supra.*) (See, also, *Louis' Restaurant, Inc.*, v. *Coffey*, 132 Misc. 690, and the cases therein cited; *Fisher* v. *Star Co.*, 231 N. Y. 414.)

In the case at bar it is perfectly apparent that the sole object of the defendant is to take advantage of the plaintiff's business which it and its predecessors have built up for a period of thirty-five years, in the course of which large sums of money have been spent in various forms of advertising in building up the good will of apparently a successful business.

The liability to deception and consequent injury justifies the issuing of an injunction *pendente lite* in a case like the present, as confusion and deception are likely to result from the similarity of names, and the proof in plaintiff's moving papers that confusion has already resulted is evidence of the liability to deception.

I am of the opinion that the plaintiff is entitled to the relief demanded in the petition, and that such relief be granted *pendente lite.* Prepare order accordingly.