OPINION OF THE COURT
Carmen Beauchamp Ciparick, J.
Motions numbered 4, 27 and 29 on the August 12, 1992 calendar are consolidated for disposition.
In motion number 4, plaintiffs move by order to show cause for an order, pursuant to CPLR 6301, granting a preliminary injunction enjoining defendants from licensing or otherwise using the name and mark "Wyndham” in connection with advertising, promoting, managing or operating a hotel in New York City or within a 50-mile radius thereof.
In motion number 27, defendants Wyndham Hotel Company, Wyndham Hotel Company, Ltd. and Wyndham Hotel Management Corporation, doing business as Wyndham Hotels & Resorts (collectively the Wyndham defendants) move for an order, pursuant to CPLR 3211 (a) (3) and (7), dismissing the first cause of action asserted in the complaint on the ground of plaintiffs’ lack of standing or, alternatively, for an order, pursuant to CPLR 603, severing the first and second causes of action for all purposes including trial.
In motion number 29 (denominated as a cross motion), defendant Yassky Wyndham Partnership (the Yasskys) move for an order, pursuant to CPLR 3212, granting summary judgment dismissing the complaint.
This is an action for declaratory and injunctive relief with respect to plaintiffs’ alleged common-law trademark rights.
*309 THE PARTIES
Briefly, the Wyndham Hotel, located at 42 West 58th Street, New York, New York, diagonally across from the Plaza Hotel, has been in existence since the 1920’s. In 1951, Leo and Ida Yassky assumed the lease for the Wyndham and eventually purchased the hotel outright. In 1957, the hotel was leased to Wyndham 58 Corporation whose president was Harry Helmsley, the renowned hotel operator. Wyndham 58 continued to operate the hotel under the name Wyndham until 1966 when the individual plaintiffs herein John Mados and his wife, Suzanne Mados, succeeded to Helmsley’s interests under a lease which by its terms does not expire until the year 2020. At some point not clearly indicated on the papers, the Yasskys created a family held partnership interest for the purpose of collecting rents from plaintiffs under the lease.
The Wyndham defendants operate and manage a chain of 36 hotel establishments throughout the United States and the Caribbean maintaining its sales office at 475 Park Avenue South, in New York City. The Wyndham defendants do not manage any hotels within the New York City area — the closest hotels being located in Philadelphia (the Wyndham Franklin Plaza) and in Washington, D.C. (the Wyndham Bristol). There is no connection or affiliation between the Wyndham Hotel in New York operated by plaintiffs and the chain of hotels operated by the Wyndham defendants.
THE COMPLAINT
According to the complaint and supporting affidavits, plaintiffs manage the Wyndham Hotel pursuant to a long-term lease under which they were granted the exclusive right to use the name and mark "Wyndham” in connection with the operation of a hotel. Plaintiffs claim that since they began to manage the 212-room hotel in 1966 it has become a prominent and world renowned hotel which caters to a highly diversified clientele including business executives and travelers, tourists, journalists and writers, and a broad array of celebrities, many of whom are frequent guests. Plaintiffs maintain that as a result of its reputation for comfort, luxury and personal attention to the needs of its guests — largely developed through word of mouth — the Wyndham Hotel enjoys an extraordinarily high occupancy rate year round without the benefit of any paid advertising.
Plaintiffs first became aware of the Wyndham defendants’ *310 use of the name "Wyndham” in connection with the operation of hotels in 1984, at which time the Wyndham defendants set up its sales office known as the Wyndham Hotel Company located at 10 Columbus Circle in New York City. Fearful that their clientele would become confused by the similarities in the names, plaintiffs by letter demanded that the Wyndham defendants discontinue their use of the name "Wyndham”. In response, the Wyndham defendants advised plaintiffs that they would refrain from opening a hotel in New York City under that name so long as plaintiffs continued to use the name in the operation of their hotel. The Wyndham defendants further advised plaintiffs that they would redirect any misdirected inquiries and telephone calls for plaintiffs’ hotel by disclaiming any affiliation with plaintiffs and providing the correct telephone number of plaintiffs’ hotel.
From 1984 until early 1992, the Wyndham defendants adhered to said understanding and refrained from efforts to open any hotel in the New York area. In March 1992, however, the Wyndham defendants amended their Federal trademark application filed with the United States Patent and Trademark Office, which originally sought concurrent use with plaintiffs of the name and mark "Wyndham” — requesting registration of an exclusive right to use the name and mark throughout the United States except New York, to expand the area of the proposed right to include New York except for the "trading area bounded by 63rd Street on the North, Fifth Avenue on the East, the Hudson River on the West and 57th Street on the South.”
By letter dated March 20, 1992, the Wyndham defendants advised plaintiffs of their filing of a Federal trademark application and the boundaries afforded therein to plaintiffs use stating "[w]e believe that this trade area is sufficient to protect your service mark rights.” Plaintiffs disputed this and in a letter dated May 13, 1992 gave the Wyndham defendants written notice that their actions were considered an infringement of plaintiffs’ rights to the name and demanded they cease from proceeding with their application and opening or operating a hotel using the name in New York City or in close proximity thereto. By letter of June 12, 1992, the Wyndham defendants rejected plaintiffs’ demand and reiterated their position that they are "entitled to a federal registration covering the U.S. with the exception of [plaintiffs’] small geographic area of common-law [sic] use”, specifically, any area "outside of the immediate environs of [plaintiffs’] hotel.”
*311 In an effort to protect their common-law right plaintiffs attempted to enlist the aid of the landlord. The Yasskys, however, viewed themselves as the owners of the Wyndham name and sought to turn the situation to their advantage by demanding that plaintiffs, in return for their cooperation, agree to substantially reduce the term of the lease and a rent increase.
In June 1992, plaintiffs instituted this action moving by order to show cause for a temporary restraining order and preliminary injunction. The complaint sets forth two causes of action against the Wyndham defendants and the Yasskys, respectively, seeking a declaratory judgment and injunctive relief with respect to plaintiffs’ purported common-law exclusive right to use the name and mark "Wyndham” in New York. The request for a temporary restraining order has been denied.
ARGUMENTS
Plaintiffs request a preliminary injunction enjoining defendants from using the name "Wyndham”. Issue has been joined with respect to the Yasskys and they now move for summary judgment based upon the lease contending that by its terms plaintiffs do not maintain, as they claim, an exclusive right to use of the name but, rather, hold the position of a mere nonexclusive licensee with the right to use the name at the one hotel with no other rights to said name. The Yasskys assert that they are the true owners of whatever common-law rights may exist in the name. Issue has not been joined with regard to the Wyndham defendants who have made a preanswer motion to dismiss also based upon the Yasskys’ purported superior exclusive rights to the "Wyndham” name.
MOTION FOR SUMMARY JUDGMENT
Both the Yasskys’ postanswer motion for summary judgment (CPLR 3212) and the Wyndham defendants’ preanswer motion to dismiss (CPLR 3211) are based upon the contention that plaintiffs lack standing to seek relief for common-law trademark infringement or declaratory relief. Therefore, in the absence of any prejudice, the court will treat the motions as one for summary judgment.
As has often been stated, a summary judgment motion, while being the procedural equivalent of a trial, is not a procedure to an abbreviated trial of material issues (Andre v *312 Pomeroy, 35 NY2d 361 [1974]; Marshall, Bratter, Greene, Allison & Tucker v Mechner, 53 AD2d 537 [1st Dept 1976]). To succeed on a motion for summary judgment it is incumbent upon the movant to clearly demonstrate that no material and triable issues of fact are presented (see, Di Menna & Sons v City of New York, 301 NY 118 [1950]; Bank of Smithtown v Beckhans, 90 AD2d 508 [2d Dept 1982]). In order to defeat the motion, the same burden falls on the opponent who must come forward with some admissible proof that would require a trial of the material questions of fact on which the opponent’s claim rests (Ferber v Sterndent Corp., 51 NY2d 782 [1980]; Zuckerman v City of New York, 49 NY2d 557 [1980]; Forray v New York Hosp., 101 AD2d 740 [1st Dept 1984]).
Here, the parties’ contentions are based upon an interpretation of the 1957 lease agreement in which two articles directly address the use of the name "Wyndham” as follows:
"ARTICLE 1. USE OF PREMISES
"Tenant [plaintiffs] shall use the demised premises for the purposes of operating and maintaining a hotel, together with stores on the street level grade if permitted by law, and for no other purpose. Continuously throughout the term of the lease, the Tenant shall conduct and operate therein a hotel under the name 'Wyndham Hotel.’ At the termination of this lease by lapse of time or otherwise, the right to the use of the name 'Wyndham Hotel’ shall revert to and be the sole property of the Landlord. * * *
"ARTICLE 58. USE OF NAME
"The Tenant hereby agrees to use the name Wyndham Hotel in the operation of the hotel business on the demised premises during the term of his lease. The Tenant shall use said name in advertising the hotel in a manner and on a standard so as not to impair its reputation as a hotel. At the termination of this lease all records such as credit information, guest lists, mailing lists, and other information relating to the said hotel business, as well as advertising cuts, etc., shall be delivered to the Landlord, and the Tenant does hereby agree to turn the same over to the Landlord without charge; and the telephone numbers of said hotel at the termination of this lease shall be turned over to the Landlord for its use with the consent of the telephone company.”
According to plaintiffs, these provisions entitle them to the exclusive use of the name "Wyndham” in the operation of the New York hotel until the year 2020 when the right to use the *313 name will "revert” back to the Yasskys. Until such time, plaintiffs claim that the Yasskys have no right to use or license others to use the name. On the other hand, defendants argue that the absence of "exclusive” language is fatal to plaintiffs’ claim. Moreover, defendants note that because numerous provisions are contained in the lease regarding the landlord’s control over the operation and management of the hotel and the absence of any provision allowing plaintiffs to open or operate other hotels under the name or any clause limiting the Yasskys’ rights with respect to the name or preventing them from making any use of the name during the lease term are clear indications of plaintiffs’ status as nonexclusive licensees with their use of the name and the increased reputation accruing therefrom inuring entirely to the Yasskys’ benefit.
Several cases have dealt with the issue of common-law trademark rights as between landlord and tenant. In Stogop Realty Co. v Marie Antoinette Hotel Co. (217 App Div 555, 558 [1st Dept 1926]), plaintiff landlord sought to restrain a former tenant from using in connection with its hotel the name "Marie Antoinette” based upon a lease which specifically granted to the lessee the right to use the name in connection with the operation of a hotel on the leased premises for a term of 21 years at which time "the right to use the same shall revert to and become the sole property of [plaintiff].” In finding that pursuant to the lease the landlord owned the name and was entitled to injunctive relief the Stogop Court enjoined the former tenant from continuing to operate a hotel by the same name on adjoining property purchased by the former tenant prior to the expiration of the lease.
In Norden Rest. Corp. v Sons of Revolution (51 NY2d 518 [1980], cert denied 454 US 825 [1981]), plaintiff tenant claimed an exclusive right to the name "Fraunces Tavern” as against the landlord after expiration of the lease pursuant to which plaintiff operated a restaurant known as the "Fraunces Tavern Restaurant” at defendants’ building located at 54 Pearl Street in Manhattan which since the eighteenth century had been known as the Fraunces Tavern where then General George Washington bade farewell to his officers at the close of the Revolutionary War. In granting defendant summary judgment dismissing the complaint the Norden Court (at 522) found that plaintiff’s claim to the name was belied by several provisions of the lease which clearly established defendant’s ownership of the appellation, one provision of which in partic *314 ular provided, "[tjhe right to use the name 'Fraunces Tavern Restaurant’ in connection with Tenant’s business shall be limited to the restaurant business conducted in the premises and to no other business or location, and such right shall terminate upon the expiration or earlier termination of the Lease.” Having recognized defendant’s ownership of the name and having accepted the licensed use of the name upon the terms dictated by the defendant landlord, the Court determined that plaintiff was estopped from asserting ownership against the landlord.
More on point with the instant facts is the case of Shubert v Columbia Pictures Corp. (189 Misc 734 [Sup Ct, NY County 1947], affd 274 App Div 751 [1st Dept], lv denied 274 App Div 880 [1st Dept 1948]). In Shubert, plaintiffs brought an action against Columbia Pictures to enjoin the distribution of the motion picture "The Jolson Story” on the grounds that the Winter Garden Theatre was prominently depicted in the picture. In dismissing the complaint, the Shubert court determined, as relevant here, that having leased the theatre to third parties, plaintiffs therein had no present interest in the name "Winter Garden” and had no standing to maintain suit. The court further held that whether plaintiffs had granted their lessees the right to use the name was irrelevant and immaterial, stating as follows: "The testimony further shows that in return for the rent received for the Winter Garden, the respective lessees were given the sole right to use the name 'Winter Garden’ in connection with the exploitation of their motion pictures both in New York City and elsewhere. Whether or not plaintiffs specifically granted their lessees the right to use the name Winter Garden is immaterial. For the good will of a public building, such as a theatre or hotel, runs with the building, and that good will passes with the lease of the building to the lessee and cannot be severed therefrom even by its first adopter and user.” (189 Misc, at 739.)
Here, unlike in Stogop (supra) and Norden (supra), the lease has not expired and is capable, by its terms, of continuing for another 28 years. There is no issue at this juncture with respect to the Yasskys’ reversionary interest to the name. Therefore, notwithstanding Shubert (supra), any present rights to the name "Wyndham” as between plaintiffs and the Yasskys necessarily flow from the lease.
The fundamental goal of the interpretation of all contracts is to ascertain the substantial, expressed intent of the parties from the entire agreement (Manson v Curtis, 223 NY 313 *315 [1918]; Morlee Sales Corp. v Manufacturers Trust Co., 9 NY2d 16 [1961]; Slatt v Slatt, 64 NY2d 966 [1985]). The complete instrument, with all of its contextual meanings, in light of the obligations as a whole, is the main guide to construction (Matter of Friedman, 64 AD2d 70 [2d Dept 1978]; Nash v Gay Apparel Corp., 9 AD2d 345 [1st Dept 1959], affd 8 NY2d 978). When a contract contains ambiguous language and the issue is to be resolved on the basis of the agreement alone, without reference to extrinsic evidence, the issue is to be determined by the courts as a matter of law (Olson Enters, v Agway Inc., 55 NY2d 659 [1981]).
After a careful examination of the lease taken as a whole and the attendant circumstances it is apparent that as indicated by the language of the lease the parties intended that the lessees maintain exclusive use of the name "Wyndham” throughout the term of the lease. As cited supra, article 58 of the lease provides that at the expiration of the lease term the use of the name would revert back to the Yasskys and at such time plaintiffs would be required to turn over all records including the telephone number of the hotel to them. Moreover, while the lease clearly makes provision for protection of the Yasskys’ reversionary interest by requiring plaintiffs to maintain the hotel in a manner not to diminish its property value, also contained therein are provisions requiring plaintiffs to be solely responsible for its condition, operation, repair, replacement, maintenance and management. Were the lease intended, as defendants assert, to be nonexclusive these provisions would be wholly superfluous, a result contrary to the above-mentioned principle of contract construction that disfavors an interpretation that would render a provision meaningless (see, e.g., Two Guys from Harrison-N.Y. v S.F.R. Realty Assocs., 63 NY2d 396 [1984]). Defendants make much of the fact of the absence of an exclusivity provision. However, although the insertion of the word "exclusive” would have rendered the provisions determinative the absence of the word does not as a matter of law render the license nonexclusive (see, L.G.B. Inc. v Gitano Group, 769 F Supp 1243 [SD NY 1991], citing Huber Baking Co. v Stroehmann Bros. Co., 252 F2d 945 [2d Cir 1958], cert denied 358 US 829 [1958]).
Even assuming, arguendo, that an ambiguity exists in the lease, general contract principles require the court to construe the language more strongly against the Yasskys who drafted the agreement back in 1957. It is undisputed that during the 26 years that plaintiffs operated the hotel the Yasskys did not *316 attempt to engage in the hotel business or exploit the Wyndham name. The Yasskys cannot now seize the opportunity by reading into the contract something that was clearly not intended.
Accordingly, defendants’ motion for summary judgment seeking dismissal of the complaint is denied.
In light of the foregoing the court has considered the remaining contentions of the parties on this issue and finds them to be either moot or lacking in merit.
MOTION TO SEVER
The Wyndham defendants move for alternative relief seeking to sever the first and second causes of action of the complaint for all purposes including trial.
CPLR 603 provides: "In furtherance of convenience or to avoid prejudice the court may order a severance of claims, or may order a separate trial of any claim, or of any separate issue. The court may order the trial of any claim or issue prior to the trial of the others.”
Here, it is apparent that the first cause of action against the Wyndham defendants alleging infringement of plaintiffs’ purported common-law rights is unrelated to the second cause of action alleged solely against the Yasskys which is in the nature of a dispute as to the lease between the parties. Therefore, for reasons of lack of common facts or legal questions and to avoid any prejudice the court finds it appropriate to sever the claims.
Accordingly, that branch of the Wyndham defendants’ motion to sever the first and second causes of action is granted.
MOTION FOR PRELIMINARY INJUNCTION
Plaintiffs seek a preliminary injunction restraining the Wyndham defendants from using the name "Wyndham” in connection with their opening a hotel within the New York City area or within a 50-mile radius thereof pending the outcome at trial.
It is well settled that a party seeking the drastic provisional remedy of a preliminary injunction is required to demonstrate (1) a likelihood of ultimate success on the merits; (2) irreparable injury absent the granting of the preliminary injunction; and (3) that a balancing of equities favors movant’s position (see, Nassau Soda Fountain Equip. Corp. v Mason, 118 AD2d *317 764 [2d Dept 1986]; CPLR 6301, 6312 [a]). As was stated in Tucker v Toia (54 AD2d 322, 325 [4th Dept 1976]), "it is not for this court to determine finally the merits of an action upon a motion for preliminary injunction; rather, the purpose of the interlocutory relief is to preserve the status quo until a decision is reached on the merits.”
With reference to plaintiffs’ claim of irreparable injury, the Wyndham defendants have operated since at least 1984 a chain of hotels under names which have included the appellation "Wyndham”. In addition, the Wyndham defendants maintain their sales office in Manhattan and any misdirected inquiries to that office about the New York hotel are admittedly redirected to plaintiffs’ hotel. At this juncture the Wyndham defendants’ intent to open a hotel in New York is speculative. Advertisements in New York for their hotels at other locations have been ongoing and have caused no harm to plaintiffs’ business. Therefore, in view of these facts, plaintiffs have not made out a case of irreparable harm, a necessary element without which the requested relief cannot be granted. Based on the foregoing the court need not and does not address the remaining requirements of the analysis.
Accordingly, plaintiffs’ motion for a preliminary injunction is denied.