PHENIX CHEESE COMPANY, Appellant, *v.* SAMUEL KIRP and MORRIS PEARL, Respondents.

First Department, March 23, 1917.

Injunction — unfair business competition — imitation of long-established trade label — adoption of name calculated to deceive purchasing public.

Where the plaintiff has produced and marketed a product labeled "Philadelphia Cream Cheese" for over thirty years it is entitled to an injunction restraining the defendant from using a label, quite similar

to that of the plaintiff, marked "Pennsylvania Cream Cheese," where it appears that neither the cheese of the plaintiff nor that of the defendant is made in the State of Pennsylvania, so that the names do not indicate the real place of manufacture, and an inspection of the two labels shows that the average customer would be likely to mistake the one for the other even though they are different in some respects.

The plaintiff, in order to be entitled to said injunction, is not under the burden of showing that the defendant is not acting in good faith and has an intent to deceive the purchasing public if, in fact, the similarity of the labels would mislead the average purchaser.

*It seems,* moreover, that the plaintiff's right to an injunction does not depend upon the relative superiority of the two products.

APPEAL by the plaintiff, Phenix Cheese Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 3d day of February, 1917, denying its motion for a temporary injunction.

*Selden Bacon,* for the appellant.

*Harold S. Fleischer,* for the respondents.

SMITH, J.:

Plaintiff is the manufacturer of a product known as "Philadelphia Cream Cheese," which he has produced and marketed for over thirty-five years. The defendants are wholesale dealers in cheese and other staples and have begun the manufacture and sale of a cheese which they designate on the labels in which the same is wrapped as "Pennsylvania Cream Cheese." The plaintiff has brought an action seeking to enjoin the use of the name and label.

Neither the cheese of plaintiff nor defendants is made in the State of Pennsylvania. Both labels have the statement, "Made in State of New York." No defense, therefore, is sought to be made or can be made that defendants' label indicates the place of manufacture of their product. The word "Philadelphia" in the one case or the word "Pennsylvania" in the other must, therefore, be taken as one of those words which "has acquired a secondary or fanciful meaning." No explanation is offered by defendants for their choice of the word "Pennsylvania," and, in view of the fact that it was apparently arbitrarily chosen, the inference is irre-

sistible that the choice was made to take an unfair advantage of the popularity of plaintiff's "Philadelphia Cream Cheese." An inspection of the two labels, as shown in the record, confirms that impression. While differing in minor essentials, the similarity in the size and style of lettering, the likeness of the artificial designs, the paraphrasing, where there is any difference of plaintiff's wording, all lead to the one result: that defendants have so closely imitated plaintiff's package that the average customer would mistake the one for the other. There is one significant difference between them. Where plaintiff places its name on its package the defendants have inserted merely the words "Ask for this brand," and nowhere does their package state who are the manufacturers.

In *Kayser & Co.* v. *Italian Silk Underwear Co.* (160 App. Div. 607)· Mr. Justice CLARKE, now the presiding justice of this court, in writing for a unanimous court, has exhaustively reviewed the cases determinative of the question here under consideration. In that case the word "Italian" had been used for many years by the plaintiff to designate a certain silk underwear which it manufactured and put upon the market. Through long-continued usage the word "Italian" signified to the trade and to the purchasing public the goods of the plaintiff, and had acquired a secondary meaning as identifying the underwear manufactured by the plaintiff. The defendant thereafter organized a corporation under the name of "Italian Silk Underwear Company" and proceeded to sell the underwear manufactured by it under that name. There was no Italian silk used in the manufacture of the underwear either of the plaintiff in that case or of the defendant Italian Silk Underwear Company. In that case, as in this, the word "Italian" was apparently used by defendant to make profit out of a name the good will of which would recommend its underwear to the public. The plaintiff sought the court's protection, and it was unanimously determined that the defendant had no right to the use of the name, although it was a geographical name, as it was apparently used in unfair competition. That case has many characteristics similar to those in the case at bar, and the authorities were there reviewed, which

abundantly support the conclusion reached. In *Newman* v. *Alvord* (51 N. Y. 189) the defendant sought to make use of the geographical name "Akron" as characterizing its cement. The term "Akron Cement" had become a well-known product manufactured by another firm for many years near the village of Akron, Erie county. The defendant was enjoined from the use of that name. In *Koehler* v. *Sanders* (122 N. Y. 65) the rule is concisely stated: "There are cases where the right to use a name to designate a product is so qualifiedly exclusive that the right to the protection of its use against infringement by others, rests upon the ground that such use by them is an untrue or deceptive representation. This may be applicable to a geographical name designating a locality or district, and which has been adopted by one as a trade-mark and afterwards deceptively used by another upon similar articles." In *Commonwealth* v. *Banks* (198 Penn. St. 397) the court refused to allow a business college in Philadelphia to be called the "University of Philadelphia" because confusion might be caused from the established reputation of the University of Pennsylvania, also located in Philadelphia.

The precise question involved in this appeal has been passed upon in a number of other cases, none of which appear to be reported, but the opinions in which are set forth in full as exhibits attached to plaintiff's complaint. In March, 1913, one Rubenstein was restrained by the United States District Court for the Southern District of New York, at the suit of this same plaintiff, from using the word "Pennsylvania," or using any other word resembling the word "Philadelphia," upon any cheese sold as cream cheese. In May, 1915, the United States District Court for the Eastern District of Pennsylvania, at the suit of this present plaintiff, restrained Kennedy & Co. of Philadelphia from labeling their product "Kennedy's Philadelphia Cream Cheese," a case obviously stronger for the defendants than the present case, in that the defendants were able to contend that "Philadelphia" was used in a geographical sense. The Circuit Court of the United States for the Northern District of Ohio granted an injunction to this plaintiff restraining certain defendants from labeling their products "Philadelphia Cream Cheese." Plaintiff also obtained a decree preventing

the use of the name "Philadelphia" at Special Term, New York county, in June, 1909. These instances show that plaintiff's right to the use of the word "Philadelphia" is established beyond question.

It is unnecessary to go into other questions raised on the appeal. Even if the word "Pennsylvania" was simply a name that occurred to one of the defendants, as his affidavit states, and defendants were acting entirely in good faith and had no intent to deceive the purchasing public, the fact remains that defendants' label and their use of the word "Pennsylvania" would probably mislead the average purchaser, and plaintiff is entitled to have it restrained.

"No evidence was given or offered to show that any person had actually been deceived by the imitation of the plaintiff's trade mark, and we think that none was necessary for the maintenance of the action. It is the liability to deception which the remedy may be invoked to prevent. It is sufficient if injury to the plaintiff's business is threatened or imminent to authorize the court to intervene to prevent its occurrence. The owner is not required to wait until the wrongful use of his trade mark has been continued for such a length of time as to cause some substantial pecuniary loss." (*T. A. Vulcan* v. *Myers*, 139 N. Y. 364, 367.)

"Neither is it necessary to establish a guilty knowledge or fraudulent intent on the part of the wrongdoer. It is sufficient that the proprietary right of the party and its actual infringement is shown." (*Colman* v. *Crump*, 70 N. Y. 573, 578.)

There are affidavits which tend to establish that defendants' cream cheese does not contain a sufficient quantity of fats to be properly denominated a "cream cheese," but it is not necessary to go into that question on this appeal. Plaintiff's rights do not depend on the superiority of its products.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the temporary injunction granted.

CLARKE, P. J., LAUGHLIN, SCOTT and SHEARN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and the temporary injunction granted. Order to be settled on notice.