MITCHEL H. MARK REALTY CORPORATION, Appellant, v. ARTHUR J. HIRSCH and MAJOR AMUSEMENT COMPANY, INC., Respondents.

First Department, December 21, 1917.

Injunction — unfair business competition — unauthorized use of name of established theatre.

An incorporated theatre company which at great expense has built a moving picture theatre named " The Strand " and which has expended large sums of money in advertising such theatre in the city of New York under said name and which draws audiences from all portions of the city, including Harlem, is entitled to a temporary injunction restraining another company having a theatre in Harlem from using the name " Harlem Strand," for the use of said name under the circumstances is unfair business competition and calculated to create a belief among the public that the defendant's theatre is a branch of that maintained by the plaintiff.

In order to obtain such injunction the plaintiff need not show that any person has actually been deceived by the similarity of names; it is sufficient to authorize the court to intervene if injury to the plaintiff's business is threatened or imminent and plaintiff is not required to wait until it has suffered substantial pecuniary loss.

APPEAL by the plaintiff, Mitchel H. Mark Realty Corporation, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 12th day of November, 1917, denying its motion for an injunction *pendente lite*.

*Mortimer Fishel* of counsel [*Irving M. Dittenhoefer* with him on the brief], for the appellant.

*Alfred G. Steiner* of counsel [*Dennis F. O'Brien* with him on the brief], *O'Brien, Malevinsky & Driscoll*, attorneys, for the respondents.

DOWLING, J.:

The plaintiff has brought this action to restrain the defendants from using the name " The Strand," or any simulation or imitation thereof, as the name, or part of the name, of any theatre, or in any connection with any advertisement or

announcement thereof, and for other relief. In this action a temporary injunction has been asked, restraining the defendants during the pendency of this action from using the name " Strand " or " Harlem Strand " as the name, or part of the name, of any theatre, or in any announcement or advertisement of any theatre. There is practically no dispute as to the facts. The plaintiff corporation was organized under the laws of the State of New York, and in August, 1913, began the erection at Broadway and Forty-seventh street, in the borough of Manhattan, city of New York, of a motion picture theatre. The plot of ground in question is 155 feet in width on Broadway, with a depth of 277 feet, upon which plaintiff has a ground lease of about sixty years and it has erected thereon a building devoted exclusively to the presentation of motion pictures, at an expense of many hundreds of thousands of dollars, it being the first theatre devoted to such use in this country built upon an elaborate scale. From the time of the beginning of building operations plaintiff advertised its intention to use the name " The Strand " as the designation of the new theatre, and down to the time of its opening continuously advertised its intention of adopting such name. Mitchel H. Mark, president of the plaintiff corporation, was the first person to adopt such name as the name of a theatre in the United States or Canada, having first opened a theatre for motion pictures under the name of " The Strand " in Toronto, Can., and thereafter opened a theatre of the same name in Buffalo, N. Y. By means of signs, newspaper notices and other advertising for nearly eight months, the proposed name of the new place of amusement was made known to the public, and the theatre was finally opened under that name on April 11, 1914. Wide publicity was given to the first performance held therein and peculiar interest attached to it by reason of the fact that it was claimed to be the largest moving picture theatre in the world. Thereafter the name of the theatre was continually kept before the theatre-going public by means of most elaborate advertising, more than $50,000 yearly being spent in New York city newspapers alone in addition to advertising throughout the country, billboard announcements displayed widely in the city (including the Harlem section), similar announcements along the

lines of the railroads entering New York, wireless bulletins on steamships entering this harbor, paid notices in magazines, trade papers and weekly newspapers, and a general advertising campaign extending as far as Europe, South America and Australia. The patronage of the plaintiff's theatre is drawn from all sections of the city of New York, including the Harlem section. After plaintiff had been conducting the theatre in question (which has a seating capacity of 3,500) for more than three years and expending large sums of money on publicity to identify the said name with its successful moving picture business, the defendants caused to be opened on One Hundred and Twenty-fifth street, between Park and Lexington avenues, a motion picture theatre which they called the " Harlem Strand." This theatre was opened September 28, 1917, and the defendants advertised extensively in papers printed for distribution in the Harlem section of the borough of Manhattan and in the Sunday edition of the New York *American.* As soon as defendants' intention to use said name in connection with their new theatre was learned by the plaintiff, it caused the defendants to be notified of their objection to the use of such name, but, disregarding the notice, the defendants have continued to use the same.

The defendants resist interference with their continued use of the name upon the ground that theirs is practically a neighborhood theatre to which admission may be obtained by the payment of five, ten or fifteen cents, while the plaintiff's theatre charges from twenty-five to fifty cents; that the pictures shown at the plaintiff's theatre are first-run pictures and do not reach the Harlem Strand until perhaps months afterwards; that plaintiff's theatre appeals to a wealthier class than does the defendants'; that plaintiff's theatre features high-class musical numbers in addition to its moving picture show, while the defendants only feature, in addition to the pictures, a large pipe organ. But every fact which appears upon this record demonstrates that the sole purpose of the adoption of the name " Harlem Strand " was to confuse the theatre-going public as to the connection of defendants' theatre with that of the plaintiff. It appears that it is not unusual for motion picture managers to have Harlem theatres, as well as those maintained by them in the

First Department, December, 1917.          [Vol. 180.

lower part of the city, the name of the owner indicating the common ownership of both. The defendants' theatre is not a small building hidden away in an obscure section, but it is located on One Hundred and Twenty-fifth street, which is the amusement center of the Harlem section and where these uptown theatres maintained by downtown managers are located. It is admitted that defendants use an electric sign in front of their theatre in which the name " Strand " appears in a vertical line about twelve feet by two feet in size, above which in a horizontal position, the letters close together, occupying a space about one and one-half feet by three and one-half feet, appears the word " Harlem," and they also refer in their announcements to the fact that it is " A Broadway Theatre at Your Door." It is admitted that plaintiff's patronage is drawn from all parts of the city of New York. The defendants offer no explanation as to how they came to adopt so obvious a copy of the plaintiff's name. Nor was their action ignorantly or inadvertently taken, for it appears that the persons interested in the defendants' theatre are all well acquainted with the moving picture field (and one of the directors at least is associated with it in a representative trade capacity) which necessarily brings to their constant attention the existence and success of the plaintiff's theatre, and most of them transact their ordinary business within daily sight of the plaintiff's theatre. With the vast field of nomenclature at their disposal from which their ingenuity or taste could select a new and still suitable name, they have chosen to copy plaintiff's title with the obvious purpose of profiting by the success, reputation and advertising campaign of the plaintiff and to benefit by their business, creating the impression that their theatre was the Harlem branch of the plaintiff's theatre or at least had some connection therewith. While there is a considerable distance between the two theatres, they are both in the metropolitan section, where distances are easily covered, and it is not disputed that plaintiff's theatre appeals to a clientele in the Harlem section as well as in the lower parts of the city. Nor does the fact that the defendants charge a lower rate of admission than does the plaintiff answer the claim that they are disregarding the plaintiff's rights. On the contrary, if they succeed in creating the impression

that they are conducting a Harlem branch of the plaintiff's theatre, the fact that they are charging a lower rate of admission will tend to divert still more the plaintiff's patronage and aggravate the damage. Defendants, with a theatre seating from 1,200 to 1,500 people on one of the most prominent and largely traveled business streets in the city, should not be allowed to recklessly invade the plaintiff's rights and by unfair business methods divert plaintiff's patronage. Nor is it an answer to say that plaintiff's theatre produces first runs of motion pictures, *i. e.*, shows them for the first time in the city, while defendants do not have the privilege of showing them until later, for both theatres present a list of largely identical stars and, needless to say, defendants do not advertise that they are showing later-run instead of first-run pictures.

None of the decisions upholding the right of a person to use his own name in business is applicable here, for this is a case of an assumption of an arbitrary name and the courts have often called attention to the different rule in the two cases. As was said in *Material Men's Mercantile Assn. v. New York Material Men's Mercantile Assn., Inc.* (169 App. Div. 847): " It was not necessary for the defendant so nearly to copy the plaintiff's corporate name, annual book and forms. The business it intended to conduct could have been described equally well by another name which would have distinguished the two corporations and would have prevented confusion. The use of so similar a name in the circumstances fairly warrants the inference that it was selected by those who incorporated the defendant for the purpose of obtaining some benefit or advantage from the good will of the plaintiff's long-established and successful business; " and (at p. 848): " The courts have often had occasion to decide in cases of infringement and unfair competition whether the addition of a prefix or suffix is sufficient to distinguish one name from another and prevent deception, and it has usually been held that it is not and that prior adoption and use entitles a corporation to protection against the use by a rival of a name so similar that it is calculated to mislead the public." Nor is this prevention of the misappropriation of established corporate names limited to business corporations, but it has been extended to charitable, patriotic and fraternal societies.

(*Salvation Army in U. S.* v. *American Salvation Army*, 135 App. Div. 268; *Society of 1812* v. *Society of 1812*, 46 id. 568; *B. P. O. Elks* v. *Improved B. P. O. Elks*, 205 N. Y. 459.) It has even been held that it is of no moment that the defendant was not for the moment competing for business with the plaintiff. (*Metropolitan Tel. & Tel. Co.* v. *Met. Tel. & Tel. Co.*, 156 App. Div. 577.) The protection given to the corporation in the use of its corporate name is given to it as well in respect to the trade name adopted by it for the conduct of its business. The law relating to unfair competition has a three-fold object: *First,* to protect the honest trader in the business which fairly belongs to him; *second,* to punish the dishonest trader who is taking his competitor's business away by unfair means; and *third,* to protect the public from deception. (*Florence Mfg. Co.* v. *J. C. Dowd & Co.*, 178 Fed. Rep. 73.) A party will be protected in the use of a name which he has appropriated and rendered valuable, and this rule is not limited to its use as a designation of manufactured goods, but has been applied to the title of a hotel. (*Howard* v. *Henriques*, 5 N. Y. Super. Ct. 725, 726) and of an industrial troupe (*Christy* v. *Murphy*, 12 How. Pr. 77). Where the respective businesses are " ,near enough to each other to support the conclusion that the defendant's conduct ' is calculated to deceive the public and induce the belief among customers that the defendant's business is connected with the plaintiff's ' " relief will be given as against unfair competition even though the businesses be in different boroughs of the same city. (*Ball* v. *Broadway Bazaar*, 194 N. Y. 429.) Nor is it necessary for plaintiff to show that any person has actually been deceived by the similarity of name; it is the liability to deception which the remedy may be invoked to prevent, and it is sufficient if injury to plaintiff's business is threatened or imminent to authorize the court to intervene to prevent its occurrence. The owner is not required to wait until the wrongful use of the name has been continued for such a length of time as to cause some substantial pecuniary loss. (*T. A. Vulcan* v. *Myers*, 139 N. Y. 364; *Phenix Cheese Co.* v. *Kirp*, 176 App. Div. 735.)

No excuse is given for the selection by defendants of the name in question. The record satisfactorily establishes

that the continued use of that name will tend to confuse the public and deceive them as to a supposed connection of defendants' place of amusement with that of plaintiff. It is admitted that plaintiff's theatre derives its patrons in part from the Harlem section and the two theatres are, therefore, competitors in business for that patronage. All the facts before us indicate that defendants by selecting the name " Harlem Strand ": sought to unfairly deprive plaintiff of the trade name it had built up in " Strand " as a name applied to a motion picture theatre.

As the defendants have absolutely failed to justify or explain their adoption of a name so closely resembling that of the plaintiff, and as the obvious effect of their use of such name is to create the impression that it is conducting a branch of the plaintiff's theatre, or is in some way connected therewith, and as their unlawful assumption of the name in question was had with full knowledge of plaintiff's claims and rights, we think a case was made out for the issuance of an injunction during the pendency of the action.

The order appealed from will, therefore, be reversed, with ten dollars costs and disbursements, and the motion for a temporary injunction granted, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, SCOTT and SHEARN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs. Order to be settled on notice.