[No. 22906.   Department Two.   April 30, 1931.]

W. F. CODE *(doing business under the firm name and style of Paramount Theatre), Appellant,* v. SEATTLE THEATRE CORPORATION *et al., Respondents.*[1]

[1]Reported in 298 Pac. 432.

*William A. Gilmore* and *W. H. Cook,* for appellant.
*Eggerman & Rosling* and *Nat Schmulowitz,* for respondents.

BEELER, J.—The plaintiff brought this action to restrain the defendants from using, assuming or adopting the name "Paramount", and from changing the name of the "Seattle Theatre" to "Seattle Paramount Theatre," and for damages. The cause was tried to the court, resulting in a judgment denying injunctive relief and dismissing the action, from which plaintiff prosecutes this appeal.

In June, 1921, the appellant erected and opened his motion picture theatre at 2115 north Forty-fifth street, Seattle, Washington, and continuously thereafter operated under the trade name of "Paramount Theatre." In 1926, the respondent Seattle Theatre Corporation was organized under the laws of the state, and during that year erected and opened its motion picture theatre at Ninth and Pine streets, Seattle, Washington, and thereafter continuously operated under the name "Seattle Theatre." The respondent Hartung was its resident manager, and the respondent Cohen, one of its trustees. The respondent corporation was organized as, and is, one of the subsidiary corporations of the Famous Players-Laskey Corporation. That corporation, now named "Paramount Publix Corporation," owns all of the stock of the defendant corporation except a few qualifying shares, and operates the theatre at Ninth and Pine streets through its subsidiary, the respondent corporation.

The Famous Players-Laskey Corporation and its successor in interest, the Paramount Publix Corpora-

tion, during the past fifteen years have expended considerable money in advertising and developing the name "Paramount" in connection with motion picture theatres, and in transactions involving the exhibition of Paramount pictures; and, as a result, the name "Paramount" became identified in Seattle and in the state of Washington, as well as nationally, as a trade name for motion picture attractions, several years prior to the time appellant adopted it.

The two theatres have entirely different locations, within the city of Seattle, each distant from the other four or five miles. Appellant's is a small theatre located in a suburban community. Its patronage is limited chiefly to the local neighborhood, and it exhibits fourth and fifth run films. On the other hand, the theatre of the respondent corporation is located in the heart of the down town section of the city, has a seating capacity of about three thousand, exhibits first run films, and draws its patronage from all parts of the city.

Because of the difference in the location and character and standard of the performances given by the respective theatres, no unfair competition has resulted, notwithstanding the use of the name "Paramount" by respondents' theatre. The use of the name "Paramount" on the electric signs in front of the respective theatres has in no way deceived the public. The advertising carried on by respondent corporation was not for the purpose of defrauding the appellant, or deceiving the public, but was such as is usually carried on by any metropolitan theatre.

The facts above stated are substantially as found by the trial court, and, from our examination of the record, we are satisfied they are abundantly sustained by the evidence. In addition thereto, we find the evidence also establishes these facts: The name "Paramount"

had not been selected by any theatre operator in the city of Seattle or in the state of Washington at any time prior to 1921—the time appellant adopted that name—and the Paramount Picture Company knew of such use and made no protest thereto.

The gravamen of appellant's complaint is unfair competition. We have frequently upheld and sustained the granting of injunctive relief in cases involving unfair competition. The general rule is as we have frequently announced:

"One person may not use the name of another already in the same line of business so that confusion or injury results therefrom." *Martell v. St. Francis Hotel Co.*, 51 Wash. 375, 98 Pac. 1116, 16 Ann. Cas. 593.

See, also, *Rosenburg v. Fremont Undertaking Co.*, 63 Wash. 52, 114 Pac. 886; *Electric Supply Co. v. Hess*, 139 Wash. 20, 245 Pac. 27; *Seattle Taxicab Co. v. De Jarlais*, 135 Wash. 60, 236 Pac. 785; *Groceteria Stores Co. v. Tibbett*, 94 Wash. 99, 162 Pac. 54, L. R. A. 1917C 955; *New York Life Ins. Co. v. Orpheum Theatre & Realty Co.*, 100 Wash. 573, 171 Pac. 534; and *Mark Realty Corp. v. Major Amusement Co.*, 180 App. Div. 549, 168 N. Y. Supp. 244.

The above authorities are cited and relied on by appellant as controlling and decisive of the question here presented. But the facts and circumstances in the instant case are entirely dissimilar and readily distinguishable from the facts and circumstances of the cases above cited. In the *Martell* case, *supra,* the plaintiff had chosen and applied the name "St. Francis" to his hotel. The defendant selected the same name. In the *Rosenburg* case, *supra,* the plaintiff had adopted the trade name "The Fremont Undertaking Co." Later the defendant adopted the name "The Fremont Undertaking Company Inc." In the *Electric Supply Co.* case, *supra,* the plaintiff adopted the name "Electric

Supply Co." The defendant selected the name "Electric Service Co."

In these three cases, not only did the competitor select a name identical, or nearly identical, to that which had been previously adopted by another, but in each instance these competitive establishments were located within a radius of from one to five blocks of each other. This proximity brought about not only unending confusion in the use of the telephone and the mails, but also in the handling and delivering of merchandise. Furthermore, the similarity of the names and the proximity of the locations was calculated to, and did, deceive the public.

In the *Seattle Taxicab Co.* case, *supra,* the plaintiff for many years had adopted and used a certain color to distinguish its cabs. The defendants adopted the same color for their cabs. We held that this was a clear attempt on the part of the rival operators to deceive the public. The *Groceteria Stores Co.* case, *supra,* has no application, because it involved a fictitious or fanciful name, and, in any event, the decision of that case was controlled by statute. In the *New York Life Ins. Co.* case, *supra,* the court enjoined the use of the name "Orpheum" but in that case both theatres were located in the down town section, and drew their patronage from all parts of the city, and it was further shown that the public was deceived by the use of this name applied to both theatres.

Thus it will be seen that, in all of the authorities relied on by appellant from this jurisdiction, the use by the competitor of the prohibited name, which had previously been adopted by another, not only resulted in great confusion, but, in each instance, was calculated to, and did, deceive the public, and hence was held to be unfair competition. In short, the competitive operator in each of these cases practiced commercial

piracy which the law abhors and which courts of equity will enjoin.

In the *Mark Realty Corp.* case, *supra,* injunctive relief was granted because the competitive theatre had selected the name "Strand". There, however, the court found that the adoption of the name was designedly and for the purpose of deceiving the theatre-going public. The court said:

"But every fact which appears upon this record demonstrates that the sole purpose of the adoption of the name 'Harlem Strand' was to confuse the theatre-going public as to the connection of defendant's theater with that of the plaintiff."

Courts of foreign jurisdiction quite generally hold that one person may not use a name previously adopted by another in the same line of business, if confusion or injury results therefrom, or where the general public is deceived thereby. This rule is succinctly stated in *Mark Realty Corp. v. Major Amusement Co.,* 180 App. Div. 549, 168 N. Y. Supp. 244:

"The law relating to unfair competition has a three-fold object: First, to protect the honest trader in the business which fairly belongs to him; second, to punish the dishonest trader who is taking his competitor's business away by unfair means; and, third, to protect the public from deception."

Applying these principles to the facts of the case at hand, it is at once apparent that the judgment of the trial court was correct. The trial court found there was no unfair competition, and hence denied injunctive relief. In the very nature of things, there could be no unfair competition. Not only are the two theatres four or five miles apart, but appellant operates a typical suburban theatre, with a limited seating capacity, exhibiting fourth or fifth run films, and caters to the people residing in the immediate neighborhood;

whereas respondent corporation's theatre is located in the heart of the down town section, has a seating capacity of about three thousand, and exhibits first run films. Furthermore, respondent corporation draws its patronage from the entire city. The electric signs used by the two theatres, and the advertising carried on by the respondent corporation, have in no way led to confusion, or deceived the theatre-going public as to which theatre it desired to patronize.

But there is an additional fact which differentiates this case from the authorities relied on by appellant. Here the name "Paramount" had been adopted by the Paramount companies and their various subsidiary and affiliated corporations for several years prior to the time appellant had chosen this name. Furthermore, by such extensive advertising, the name "Paramount" had acquired a particular significance in connection with motion picture operations and motion picture theatres. Appellant was aware of all these facts at the time he adopted the name "Paramount." Hence, he acquired no exclusive right to the use of the name.

"For another reason, the use of the design containing a map of Italy cannot be restrained. That is because it cannot be made the subject of exclusive private property. Since the same design, regardless of the color, was used, as indisputably shown, by Parodi & Erminio in this market at least several years before the map of Italy was made a part of the design of appellant, appellant had no exclusive right to its appropriation. In other words, it had been appropriated." *Vittucci Co. v. Merline,* 130 Wash. 483, 228 Pac. 292.

So here, the name "Paramount" had been appropriated and used by the Paramount companies several years prior to the time appellant had adopted it. The

trial court found he had appropriated this name designedly:

"The name Paramount was applied by plaintiff to the motion picture theatre operated by him in order to realize upon and benefit from the goodwill theretofore created in said name Paramount by said Paramount companies and with the design that such use might in the future be utilized to forestall extension and development of the activities of the Paramount companies in Seattle and to thereby demand and receive monetary consideration from said companies."

While we are unable to agree with this specific finding, yet the fact remains that appellant was thoroughly familiar with the general use of the name "Paramount" by motion picture producers and theatre operators throughout the nation.

Nor is the doctrine of laches applicable here. Appellant can not be heard to complain merely because the respondent took no steps to enjoin him from using the name "Paramount". Laches is a defense, and can only be asserted as a shield; it can never be used as a weapon of offense. Inasmuch as respondent asks no affirmative relief, the authorities cited by appellant are inapplicable.

Judgment affirmed.

TOLMAN, C. J., BEALS, and MILLARD, JJ., concur.