New York World's Fair 1939 Incorporated, Plaintiff. *v.* World's Fair News, Inc., Joseph F. Coufal and John W. Seymour, Defendants.

Supreme Court, Special Term, New York County, May 13, 1937.

*Lord, Day & Lord* [*George De Forest Lord* and *Woodson D. Scott* of counsel], for the plaintiff.

*Charles Belous* [*Emil N. Baar* and *Arthur Block* of counsel], for the defendants.

SHIENTAG, J.   This is an action in equity to enjoin the defendants from publishing and distributing a magazine called *World's Fair News*, and from using the name " World's Fair " in connection with that publication or in the name of the corporate defendant.

The action was commenced August 1, 1936, soon after the publication of the July issue of *World's Fair News*, that being the first issue of the magazine published by the defendants.   In effect the suit is one to protect the plaintiff's name against imitation by the defendants in a manner likely to lead to confusion in the minds of the public.

Plans for holding the World's Fair in New York were developed in 1935, and were publicly announced in September of that year. The plaintiff was organized as a quasi-public corporation to plan and operate the World's Fair. Its officials include many well-known persons who are likely to cause public attention to be directed to it. The announcement of the World's Fair was followed by wide publicity. The State and city appropriated large sums of money in connection with the plans for the fair, and Federal legislation is pending for appropriation of Federal funds to assist in the project. The plaintiff will spend approximately $50,000,000 on the venture. Other States and foreign governments are participating in the fair. Lands have been leased from the city for the fair site. The plaintiff has its own publication, *World's Fair Bulletin*, giving information about the fair without charge, and that magazine has a circulation of approximately 35,000 copies. The publication of such a bulletin or magazine is the usual practice in the operation of fairs and expositions generally. The defendant Coufal knew in April of 1936 that the plaintiff would have its own official publication.

The defendant corporation was organized May 19, 1936. Two days later the defendant Seymour and the wife of the defendant Coufal applied to Mr. Justice Lockwood, sitting in Special Term in Queens county, for approval of the certificate of a membership corporation under a name containing the words "World's Fair." That application was refused approval on May 22, 1936, because of the probability of confusion that would arise in the public mind by reason of the similarity of the name of the proposed corporation to that of the plaintiff. The opinion of Mr. Justice Lockwood was published in the *New York Law Journal* on Saturday, May 23, 1936. Before the defendants started publication of the magazine, therefore, they were well aware of the likelihood of the confusion which would result from the similarity of names and the mixing of corporate identities.

It is apparent that the publication of the defendants' magazine was started solely to exploit the possibilities arising out of the World's Fair in New York. Mr. Coufal wrote the editorial entitled "A Fair Deal for the Fair Visitor," which appeared on page 1 of the July issue, and stated clearly that the magazine was to be devoted to the New York World's Fair. A circular issued by defendant Coufal as "a personal message" urged prospective advertisers to "cooperate and get our share of the World's Fair prosperity." The magazine carries mostly local advertising which often refers to the proximity of the advertiser to or his other connection with

the New York World's Fair. If the original intention of its founders was to devote the magazine to fairs in general, such purpose was not definitely expressed at the outset. Subsequently news of other fairs appeared in the magazine. Ten issues of the magazine have been published to date, and eight of these contain outside covers which unmistakably refer to the New York World's Fair. The leading editorials, articles and miscellaneous news items likewise feature the World's Fair.

The World's Fair slogan contest running from July, 1936, to January, 1937, the items in all the issues purporting to give the day by day progress of the World's Fair, and the "Fair Answers for Fair Visitors" items in the July and August, 1936, issues, all contribute to lend to the magazine an official flavor. The cumulative effect of the above-mentioned features of the defendants' magazine and the resulting impression to the public is apparent. The magazine must be judged as a whole by its appearance and general impression. "The law is not made for the protection of experts, but for the public." (*Florence Mfg. Co.* v. *Dowd & Co.*, 178 Fed. 73, 75.)

The fact that plaintiff is a quasi-public corporation and not an ordinary commercial enterprise does not affect its right to relief. A corporation not organized for profit may maintain an action to enjoin the imitation of its name by another. (*B. P. O. Elks* v. *Improved B. P. O. Elks*, 205 N. Y. 459; *Salvation Army* v. *American Salvation Army*, 135 App. Div. 268; *Daughters of Isabella No. 1* v. *National Order of the Daughters of Isabella*, 83 Conn. 679; 78 A. 333.) The courts have repeatedly held that an injunction lies to restrain simulation and use by one corporation of the name of another corporation, which tends to lead to confusion and to enable the imitator to obtain business or other advantage as a result of the confusion. (*Higgins Co.* v. *Higgins Soap Co.*, 144 N. Y. 462; *Standard Oil Co. of New Mexico* v. *Standard Oil Co. of Cal.*, 56 F. [2d] 973, 977; *American Steel Foundries* v. *Robertson*, 269 U. S. 372; *Churchill Downs Dist. Co.* v. *Churchill Downs, Inc.*, 262 Ky. 567; 90 S. W. [2d] 1041.)

The defendants contend that the words "World's Fair" are generic or descriptive words which any person may use. The well-established rule is, however, that such words or names may acquire a secondary meaning entitling them to protection. (*Macy & Co.* v. *Colorado Clothing Mfg. Co.*, 68 F. [2d] 690, 692; *Standard Oil Co. of Maine* v. *Standard Oil Co. of N. Y.*, 45 id. 309; *Yale Electric Corp.* v. *Robertson*, 26 id. 972, 974; *Philad. Co.* v. *Murray's Beauty Salon*, 14 Fed. Supp. 626; *Fuller* v. *Huff*, 104 Fed. 141.)

After the public announcement of the World's Fair in September, 1935, and the publicity which followed, the words "World's Fair" acquired a secondary meaning which entitled them to protection, by a court of equity.

Actual competition is not necessary as a basis for injunctive relief to prevent the imitation of a name. (*Tiffany & Co.* v. *Tiffany Productions, Inc.*, 147 Misc. 679; affd., 237 App. Div. 801; affd., 262 N. Y. 482; *Long's Hat Stores Corp.* v. *Long's Clothes, Inc.*, 224 App. Div. 497; *Dunhill, Inc.,* v. *Dunhill Shirt Shop, Inc.*, 3 Fed. Supp. 487; *Wall* v. *Rolls-Royce*, 4 F. [2d] 333; *Maison Prunier* v. *Prunier's Restaurant & Cafe, Inc.*, 159 Misc. 551.) The use by the defendants of the words "World's Fair" in connection with the name of its magazine is misleading and bound to confuse the public. The defendants must have known this before the first issue of the magazine was published, as the defendant Seymour and the wife of the defendant Coufal had failed in their attempt to organize a membership corporation with the name containing the words "World's Fair."

It is not essential to prove actual confusion, deception or bad faith as a basis for injunctive relief to prevent the use of a name which is likely to lead to confusion. (*Phenix Cheese Co.* v. *Kirp*, 176 App. Div. 735; *Florence Mfg. Co.* v. *Dowd & Co.*, 178 Fed. 73; *Knox Hat Co.* v. *Self-Service Millinery Stores, Inc.*, 138 Misc. 124; Id. 426; affd., 227 App. Div. 716, 721; *United Dressed Beef Co.* v. *United Butchers, Inc.*, 147 Misc. 92; *Albany Packing Co.* v. *Crispo*, 227 App. Div. 591; affd., 253 N. Y. 607.) The likelihood of confusion justifies injunctive relief. (*Marke Realty Corp.* v. *Hirsch*, 180 App. Div. 549; *Standard Oil Co. of New Mexico* v. *Standard Oil Co. of Cal.*, 56 F. [2d] 973; *Macy & Co.* v. *Colorado Clothing Co.*, 68 id. 690; *Nu Enamel Corp.* v. *Nate Enamel Co.*, 243 App. Div. 292; affd., 268 N. Y. 574.) The magazine itself is the best evidence of such likelihood. Not only the name, but also the contents of the magazine, which is devoted largely to the World's Fair, would indicate to the uninformed some connection with the official World's Fair organization. The numerous maps and photographs purporting to depict the World's Fair and its environs, articles purporting to be by and about prominent officials of the World's Fair, articles and news items relating to the World's Fair, slogan contest invitations, communications soliciting advertisements, and advertisements and miscellaneous matter referring to the World's Fair are the best evidence of the misleading impression the magazine is likely to give to the public. With all the other names which the defendants could have taken, why did they choose a name including the words "World's Fair?" There is no

answer except the defendants' expectation that some advantage would result to them by reason of the confusion of corporate identities.

The use of the words " World's Fair " by other persons or corporations " is no shielding defense " to the defendants' use of those words. (*Churchill Downs Dist. Co.* v. *Churchill Downs, Inc.*, 262 Ky. 567, 575; 90 S. W. [2d] 1041; *Standard Oil Co. of Maine* v. *Standard Oil Co. of N. Y.*, 45 F. [2d] 309, 313; *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.*, 32 Fed. 94, 101; *Sartor* v. *Schaden*, 125 Iowa, 696; 101 N. W. 511.) The insertion by the defendants in small print, on the inside pages, in the " masthead " of their second and subsequent issues, of a disclaimer of any connection with the plaintiff is not adequate notice to the public, nor does it constitute a defense to an action for injunctive relief. (*Merriam Co.* v. *Ogilvie*, 159 Fed. 638; certiorari denied, 209 U. S. 551.) The same is true of the editorial entitled " On Our Own," and one or two others, purporting to disclaim connection with the plaintiff. The defendants' letterheads, subscription blanks, advertisements, rate cards and slogan contest invitations contain no disclaimer of any kind.

In view of the foregoing, the plaintiff is entitled to judgment. It is entitled to an injunction restraining the defendants, their officers, agents and employees from using the words " World's Fair " or any colorable imitation thereof as part of the corporate defendant's name or in the name of the defendants' magazine.

If the corporate defendant really intends to devote itself to the news of fairs and expositions throughout the world, it may select a corporate name and a name for its publication that will be expressive of its purpose and at the same time will not mislead and confuse the public while the New York World's Fair is being planned and operated. The defendants have only themselves to blame for what has occurred. They should have heeded the warning of Mr. Justice LOCKWOOD and the subsequent complaints of those in charge of the important quasi-public enterprise involved. The defendants may have a month in which to effect the necessary change of name. If the defendants so desire they may submit on the settlement of the judgment a list of substitute names for the court's approval.

Settle final judgment in accordance with the foregoing decision. The judgment shall contain a provision that the parties may apply at the foot thereof for such other or further relief as may be proper.