**WONDER WORKS and Wonder Workshops, Inc., Plaintiff,**

v.

**CRANIUM, INC., Defendant.**

No.: 2:06–1896.

United States District Court, D. South Carolina, Charleston Division.

Aug. 22, 2006.

---

454

Douglas W. Kim, Hunter S. Freeman, McNair Law Firm, Greenville, SC, for Plaintiff.

Brent OE Clinkscale, Jacquelyn D. Austin, Jeffrey Pascoe, Womble Carlyle Sandridge and Rice, Greenville, SC, John D. Denkenberger, Robert J. Carlson, Christensen O'Connor Johnson Kindness, Seattle, WA, for Defendant.

## ORDER

DUFFY, District Judge.

On July 19, 2006, Plaintiff Wonder Works and Wonder Workshops, Inc. ("Wonder Works" or "Plaintiff"), moved this court for a preliminary injunction to enjoin Cranium, Inc. ("Cranium" or "Defendant") from using the marks WONDERWORKS, CRANIUM WONDERWORKS, any mark containing WONDER WORKS or any other mark that is confusingly similar to Plaintiff's WONDER WORKS registered marks. On August 17, 2006, the court held a hearing during which it heard the parties' arguments regarding the motion.

## BACKGROUND

Plaintiff has been in the business of selling and distributing toys and games in Charleston County, South Carolina under its WONDER WORKS mark for nearly sixteen years. Plaintiff has two locations, one in Mount Pleasant and one in the West Ashley neighborhood of Charleston. On or about March 4, 1991, Plaintiff filed federal service mark applications for the mark WONDER WORKS and design, to be used in association with retail toy and gift store services. These federal mark applications matured into U.S. Trademark Registrations Nos. 1,765,042 and 1,695,058 on or about June 16, 1992 (the "Marks"). Both of these registered Marks have become "incontestable" pursuant to 15 U.S.C. § 1065. Therefore, Plaintiff's registrations are conclusive evidence of the validity of the registered Marks, of the registration of the Marks, of the owner's ownership of the Marks, and of the owner's exclusive right to use the Marks with the goods/services. 15 U.S.C. § 1115(b). Plaintiff uses its Marks both at its retail store and on the Internet through its website, www.wonderworkscharleston.com, which receives about 500 "hits" a day. Plaintiff's website is not interactive in any way; however, it lists both a local and an 888 number and encourages potential customers to order goods that it offers to ship throughout the nation.

Defendant Cranium, Inc. is in the business of designing, creating, and manufacturing toys, games, and board games. Defendant sells its Cranium products across the nation. Since at least 2000, Plaintiff has sold Cranium products in its Wonder Works retail toy stores. Given that De-

fendant maintained a business relationship with Plaintiff, Plaintiff asserts that Defendant knew, or should have known, of Plaintiff's use of the Mark.

On April 15, 2005, Defendant filed a federal trademark application for the mark WONDERWORKS in association with toys, activity toys, creativity toys, video games, computer software, paper goods, and printed matter. On or about November 17, 2005, the Trademark Office refused to register Defendant's trademark application based, in part, on the fact that when used in connection with the goods identified in the application, Cranium's WONDERWORKS mark is likely to cause confusion with Plaintiff's WONDER WORKS marks.

Defendant filed another federal trademark application for the mark CRANIUM WONDERWORKS on or about March 1, 2006. Approximately fifteen days after filing this second application, Defendant contacted Plaintiff to inquire whether Defendant could use the WONDERWORKS mark for a new line of toys. Shortly thereafter, Defendant provided Plaintiff with a proposed agreement entitled "Trademark Co–Existence Agreement." Plaintiff refused to enter the agreement or to consent to Defendant's use of the WONDERWORKS mark. Plaintiff insisted that Defendant either enter into a license agreement with Wonder Works or discontinue any plans to use any mark including WONDER WORKS or any other confusingly similar marks in association with toys or games.

Despite knowing that Plaintiff does not consent to any use of WONDERWORKS and/or CRANIUM WONDERWORKS in connection with toys and/or games, Defendant began using these marks in advertising, marketing, selling, and offering for sale three games that target the same type of customers to which Plaintiff targets its retail toy store services. Cranium also advertises and sells the games under the contested CRANIUM WONDERWORKS mark on its website, www.cranium.com.

On June 27, 2006, Plaintiff filed this action against Defendant Cranium, alleging violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), common law trademark infringement, violations of the South Carolina Unfair Trade Practices Act, and interference with prospective economic relations. Plaintiff now seeks a preliminary injunction to enjoin Defendant from further use of the contested WONDERWORKS and/or CRANIUM WONDERWORKS marks.

## *ANALYSIS*

In the Fourth Circuit, the entry of a preliminary injunction is governed by the four-part test set forth in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir.1977), which requires the court to consider: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction were to be denied, (2) the likelihood of irreparable injury to the defendants is the request were granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. *Id.* at 193–95. When deciding whether to grant a preliminary injunction, the court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied; if such a showing is made, the court must then balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant. *See Safety–Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 859 (4th Cir.2001); *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir.1991). If the balance of the hardships "tips decidedly in favor of the plaintiff," *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359

(4th Cir.1991) (internal quotation marks omitted), then typically it will "be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation," *Blackwelder*, 550 F.2d at 195 (internal quotation marks omitted). But if the balance of hardships is substantially equal as between the plaintiff and defendant, then "the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success." *Direx*, 952 F.2d at 808 (internal quotation marks omitted).

The Fourth Circuit has held that, in the context of a Lanham Act trademark infringement action, "[a] finding of irreparable injury [to the plaintiff] ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 938 (4th Cir.1995) (quoting *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 608 (6th Cir.1991)); *see Scotts Co. v. United Industries Corp.*, 315 F.3d 264, 273 (4th Cir.2002) ("In Lanham Act cases involving trademark infringement, a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case."); *see also Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir.2000) ("Irreparable harm is generally presumed in cases of trademark infringement and dilution."); *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2nd Cir.1997) ("In the context of trademark and unfair competition injunctions, the requirement of irreparable harm carries no independent

weight, as we have held that a showing of likelihood of confusion (a requirement of both trademark infringement and unfair competition claims) establishes irreparable harm."); *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir.1977) (holding that the complete injury from trademark infringement "almost inevitably" results in irreparable injury that is not fully compensable in damages). Another district court in this Circuit has added that: "[Infringement] gives rise to irreparable injury, in that plaintiff has lost control of its business reputation to this extent, there is substantial likelihood of confusion of the purchasing public, there may be no monetary recovery available, and there is an inherent injury to the good will and reputation of the plaintiff." *Philip Morris Inc. v. Mid-West Tobacco Inc.*, 9 U.S.P.Q.2d 1210, 1215, 1988 WL 150693 (E.D.Va.1988) (quoting *Long John Silver's Inc. v. Washington Franchise, Inc.*, 209 U.S.P.Q. 146, 149, 1980 WL 30249 (E.D.Va.1980)).

In this case, Plaintiff asserts that, if the court does not issue a preliminary injunction, it will be irreparably harmed by the inevitable devaluing of its Marks inherent in the continuing infringement of its Marks. As such, the "likelihood of irreparable harm to Plaintiff" question is intertwined with questions about the merits of the infringement action. Accordingly, the court's analysis of the balance-of-the-hardship question will first require a detour into the substance of Plaintiff's Lanham Act claims. *Scotts Co.*, 315 F.3d at 272.

■■■ To succeed on a Lanham Act cause of action for trademark infringement, a plaintiff must show that (1) its mark is protectable[1] and that (2) the use

---

1. In this case, Plaintiff claims that it has used the WONDER WORKS mark in conjunction with its retail toy and games services for

sixteen years following the registration of the mark. As such, Plaintiff claims that its right to use the Mark is incontestable, pursuant to

of the junior mark is likely to confuse the public. 15 U.S.C. §§ 1114(1)(a). "[I]t is not necessary for the owner of the registered trademark to show actual confusion: the test is whether there is likelihood of confusion." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir.1984). If the use of the contested mark is likely to cause such "likelihood," the owner of the registered trademark is entitled to relief. *Id.* The factors to be considered in determining likelihood of confusion are:

(a) the strength or distinctiveness of the mark;

(b) the similarity of the two marks;

(c) the similarity of the goods or services the marks identify;

(d) the similarity of the facilities the two parties use in their businesses;

(e) the similarity of the advertising used by the two parties;

(f) the defendant's intent; and

(g) actual confusion.

*Id.* (citing *Sun–Fun Products v. Suntan Research & Development*, 656 F.2d 186, 189 (5th Cir.1981)). The court generally applies these factors, but with the understanding that "[n]ot all these [factors] are always relevant or equally emphasized in each case." *Modular Cinemas of America, Inc. v. Mini Cinemas Corp.*, 348 F.Supp. 578, 582 (S.D.N.Y.1972).

■ Considering the above factors, the court is not convinced that Plaintiff has made the requisite showing of likelihood of confusion. First, in determining the strength of the Mark, the court weighs two aspects of strength:(1) Conceptual Strength: the placement of the inherent distinctiveness of the mark on the spectrum of marks; and (2) Commercial Strength: the marketplace recognition value of the mark. *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 405 F.Supp.2d 680 (E.D.Va.2005) (citing *McCarthy on Trademarks* § 11:83); *see Petro Stopping Centers, L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 93 (4th Cir.1997) ("Thus, courts must examine, in addition to the mark's characterization as suggestive or descriptive, the extent of secondary meaning a mark has acquired in the eyes of consumers."). The court agrees that Plaintiff's sixteen year, uninterrupted use of WONDER WORKS in its retail business constitutes a showing of the commercial strength of the Mark, especially considering the great deal of time, money, and effort Plaintiff spent building its reputation in the Charleston area. However, as Defendant points out, many third-parties [2] use the mark WONDER WORKS (either alone or in combination with other words) in association with children's activities and products throughout the nation. Such prevalent third party usage undermines Plaintiff's claim that the WONDER WORKS mark is particularly distinctive. *In re Broadway Chicken, Inc.*, 1996 WL 253841, 38 U.S.P.Q.2d 1559 (Trademark Tr. & App. Bd.1996) ("Evidence of widespread third-party use, in a particular field, of marks containing a certain shared term is competent to suggest that purchasers have been conditioned to look to other

15 U.S.C. § 1065, and thus the registration constitutes conclusive evidence of the validity of its mark, the registration of the marks, Plaintiff's ownership of the marks, and Plaintiff's exclusive right to the marks. 15 U.S.C. § 1115(b). Defendant does not deny that the Mark is incontestable pursuant to section 1065; therefore, the court should consider the Mark to be "protectable."

**2.** Defendant names several entities in Illinois, Florida and Tennessee that operate educational and amusement facilities under the Wonder Works trade name, and include on-premises retail sale of toys and souvenirs

elements of the marks as a means of distinguishing the source of goods or services in the field."). As such, the court finds that, although Plaintiff has proven that the Mark has significant commercial strength, Plaintiff has not shown that the inherent distinctiveness of the Mark is particularly strong.

■ Second, the court is not convinced that the Plaintiff has proven that the Marks and Defendant's allegedly infringing mark are so similar as to be likely to cause confusion. Plaintiff's Mark is WONDER WORKS and Defendant's contested mark is CRANIUM WONDERWORKS. The well-known Cranium house mark—with its signature purple brain logo—is a part of the allegedly offending mark, and is obviously not a part of Plaintiff's Marks. Although clearly "exact similitude is not required" for a finding that marks are confusingly similar, *Washington Speakers Bureau Inc. v. Leading Authorities Inc.*, 33 F.Supp.2d 488, 49 U.S.P.Q.2d 1893 (E.D.Va.1999), *aff'd* 217 F.3d 843 (4th Cir. 2000) ("[A]bsolute identity is not necessary for infringement; all that is necessary is enough similarity between the marks to confuse consumers."), the inclusion of the Cranium house mark could minimize the risk that the marks are confusingly similar. Other courts have held the prominent use of a well-known house mark considerably reduced or eliminated the likelihood of confusion. *See W.W.W. Pharmaceutical Co. v. Gillette Co.*, 808 F.Supp. 1013 (S.D.N.Y.1992), *aff'd* 984 F.2d 567 (2d Cir. 1993) (no likelihood of confusion between RIGHT GUARD SPORT STICK for deodorant and SPORTSTICK for lipbalm because of use of RIGHT GUARD); *A & H Sportswear, Inc. v. Victoria's Secret*

*Stores, Inc.*, 237 F.3d 198 (3d Cir.2000) (finding no likelihood of confusion between MIRACLESUIT and MIRACLE BRA, both for swimwear, where latter was used with a house mark: "affixing a well-known house mark like that of Victoria's Secret can help diminish the likelihood of confusion."). The court further notes that the fonts and symbols on the allegedly similar marks are not the same. The court refrains from determining whether the use of the Cranium house mark and the variations in styling sufficiently differentiates Defendant's mark from the Marks;[3] however, these differences lessen the possibility that the marks are so similar as to cause confusion.

■■ Because Plaintiff has not shown that its Marks are inherently distinctive and that the contested mark is confusingly similar to the Marks, the court finds that Plaintiff has not proven a strong likelihood of consumer confusion. This finding undermines Plaintiff's claim that its reputation and Marks would be irreparably harmed absent the issuance of a preliminary injunction. *Scotts Co.*, 315 F.3d at 283 ("[B]ecause we have rejected [Plaintiff's] evidence of consumer confusion, it follows that the district court erred by applying the presumption of irreparable harm."). Further, the court finds that Defendant *would* be substantially harmed by a an order enjoining distribution of toys bearing the CRANIUM WONDERWORKS mark. These toys are already in stores, in customer distribution centers and warehouses throughout the United States, and in daily production. If enjoined, Defendant would be faced with the cost of recalling all of its products already in the hands of consumers; shipping them

---

3. The court remains concerned, for example, that the Cranium house mark is not prominent enough to "cleanse" the other similarities between the marks. The court is also concerned that the WONDERWORKS part of the Cranium mark appears to be two words, not one word as described in the trademark application.

back to Cranium; designing, printing and fabricating new packaging; re-boxing the products and distributing them once again. Even if the court were to limit an injunction to Charleston County, which Defendant claims is the "geographic area in which [Plaintiff] provides services under its mark," such an injunction would cause significant monetary losses to Cranium.

Where the harm suffered may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable. *Hughes Network Systems, Inc. v. InterDigital Communications Corp.*, 17 F.3d 691, 694 (4th Cir.1994). However, in this case, the court is concerned that the bond required to protect Defendant's interests should Plaintiff not succeed on the merits of its case would be so large as to be impossible for Plaintiff to provide. Courts have held that irreparable harm may still exist, even where the injury is purely monetary, where "[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir.1984); *see also Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 206 (3d Cir.1990) (holding that "the unsatisfiability of a money judgment can constitute irreparable injury"). Applying this reasoning, the court finds that Defendant could be irreparably harmed by the issuance of an injunction because, if Plaintiff is unsuccessful on the merits, it is unlikely that Plaintiff would have the means to fund a bond that would adequately compensate Defendant for the loss caused by the injunction.

Plaintiff does not contest that an injunction would harm Defendant. However, because Defendant had knowledge of the preexisting mark—through its distributor-retailer relationship with Plaintiff and

though the Trademark Office's denial of their first application for the WONDER-WORKS mark—Plaintiff asserts that Defendant's investment in the CRANIUM WONDERWORKS campaign was made at Defendant's own risk and with full knowledge of Plaintiff's rights. Accordingly, Plaintiff argues that Defendant cannot claim that it would be irreparably harmed if the injunction is granted, because such harm was self-inflicted. Plaintiff's argument, however, is without merit. The Fourth Circuit instructs courts that it is error to consider the likely harm to the defendant with any less weight because such harm may have been self-inflicted. As that Court explains,

> If self-made harm is given substantially less weight, as it was by the district court in this case, then the balance of the harms will almost always favor the plaintiff, thus transforming a preliminary injunction from an extraordinary remedy into a routine occurrence. And when the purpose behind the requirement that the court balance the harms is recognized, it becomes apparent that it is error to dismiss as self-inflicted the harms that might be suffered by a defendant if an injunction were to issue. "[G]ranting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way. The danger of a mistake in this setting is substantial.' " *Hughes Network Sys., Inc. v. InterDigital Communications Corp.*, 17 F.3d 691, 693 (4th Cir.1994) (internal alteration omitted) (quoting *American Hosp. Supply Corp. v. Hospital Prods. Ltd.*, 780 F.2d 589, 593 (7th Cir.1986)).... Thus, while cases frequently speak in the short-hand of considering the harm to the plaintiff if the injunction is denied and the harm to the defendant if the injunction is granted, the real issue in this regard is the de-

gree of harm that will be suffered by the plaintiff or the defendant if the injunction is *improperly* granted or denied: If the judge grants the preliminary injunction to a plaintiff who it later turns out is not entitled to any judicial relief-whose legal rights have not been violated-the judge commits a mistake whose gravity is measured by the irreparable harm, if any, that the injunction causes to the defendant while it is in effect. If the judge denies the preliminary injunction to a plaintiff who it later turns out is entitled to judicial relief, the judge commits a mistake whose gravity is measured by the irreparable harm, if any, that the denial of the preliminary injunction does to the plaintiff. *American Hosp. Supply Corp.*, 780 F.2d at 593. By dismissing outright or giving less weight to the harm that would be suffered by a defendant on the grounds that the harm was self-inflicted, a court is effectively considering the harms that would flow from a *properly entered* injunction (that is, an injunction entered against a defendant who would go on to lose) rather than considering the harms that would flow from an injunction entered in error (an injunction entered against a defendant who would go on to win). We therefore believe that it is error for a district court to conclude that any harm that would be suffered by a defendant was self-inflicted and thus entitled to lesser weight in the balancing-of-the-harms portion of the preliminary injunction calculus.

*Scotts Co.*, 315 F.3d at 284-85. After receiving such instruction from the Fourth Circuit, the court will not give less weight to Defendant's likely harm because such harm is allegedly "self-inflicted."

Plaintiff Wonder Works has shown that it *may* succeed on the merits of this case; however, where the Defendant is likely to suffer such strong injuries, Plaintiff must make "a clear showing of a likelihood of success" to justify the issuance of a preliminary injunction. *Direx*, 952 F.2d at 808 As such, the court finds that a preliminary injunction is not appropriate at this time. The court orders, however, that this case be tried on an expedited schedule, so as to determine the merits of Plaintiff's causes of action as quickly as possible and thus minimize any possible further harm to either party.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiff Wonder Works and Wonder Workshops, Inc.'s Motion for Preliminary Injunction is hereby **DENIED.** The parties are further **ORDERED** to submit a Scheduling Order, setting the trial of this matter in six months, within five days of the issuance of the Order.

**AND IT IS SO ORDERED.**